# MISSOURI PACIFIC RAILROAD COMPANY *v.* UNITED STATES.-

### APPEAL FROM THE COURT OF CLAIMS.

No. 280.  Argued April 28, 1926.—Decided June 7, 1926.

1. The Act of July 28, 1916, authorized the Interstate Commerce Commission to determine on a space basis the compensation to be paid railroads for transportation of mails in railway post-office cars and for the service connected therewith, and to allow land-grant roads only 80% of this compensation although part of the space in such cars by which such compensation is gauged is not occupied for mail matter but is used for the distribution of mail on the trains. P. 606.

2. The obligation of land-grant railroads, as expressed in granting acts passed in 1852 and 1853, to transport the mails at all times "under the direction of the Post-Office Department, at such price as Congress may direct," looked to the future and includes the furnishing of space in railway post-office cars for distribution purposes as required in this case by the Department pursuant to the Act of July 28, 1916. P. 607.

59 Ct. Cls. 524; 60 *id.* 183; affirmed.

APPEAL from a judgment of the Court of Claims dismissing on demurrer a petition of the Railroad seeking

additional compensation on account of space in railway post-office cars used by post-office employees in distributing mails.

*Mr. Frederick H. Wood,* with whom *Mr. Thomas W. Gregory* was on the briefs, for appellant.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* and *Mr. Randolph S. Collins,* Attorney in the Department of Justice, were on the brief, for the United States.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

Appellant operates and, since June, 1917, has operated, a system of railroads which includes a number of land-grant lines in Missouri and other states. These lines received land grants in aid of their construction and are bound to carry the United States mails, under the provisions of land-grant acts, passed in 1852 and 1853, § 6, c. 45, 10 Stat. 8, 10; § 6, c. 59, 10 Stat. 155, 156, both of which provide that the United States mails shall be transported on the railroads receiving the grants at all times " under the direction of the Post-Office Department, at such price as Congress may by law direct."

By the Act of July 28, 1916, § 5, c. 261, 39 Stat. 412, 425–431, the Interstate Commerce Commission was directed " to fix and determine from time to time the fair and reasonable rates and compensation for the transportation of . . . mail matter by railway common carriers and the service connected therewith, prescribing the method or methods by weight, or space, or both, or otherwise, for ascertaining such rate or compensation, .' . ."

In respect of land-grant lines, the act provides:

" The Interstate Commerce Commission shall allow to railroad companies whose railroads were constructed in

whole or in part by a land grant made by Congress on condition that the mails should be transported over their roads at such price as Congress should by law direct only eighty per centum of the compensation paid other railroads for transporting the mails and all service by the railroads in connection therewith."

The act confers upon the Postmaster General the power to state railroad mail routes and authorizes mail service thereon of four classes, the first two of which are: (1) full railway post-office car service, (2) apartment railway post-office car service. For the first class, service is to be "by cars forty feet or more in length, constructed, fitted up, and maintained for the distribution of mails on trains." For the second class, the service is the same "by apartments less than forty feet in length," etc. The service is to include the carriage of mail matter, equipment, and supplies for the mail service and the employees of the Postal Service or Post Office Department, as the Postmaster General shall direct to be carried. All cars and parts of cars used for the service are to be of such construction, style, length, and character, and furnished in such manner as the Postmaster General shall require, and are to be constructed, fitted up, maintained, heated, lighted, and cleaned by and at the expense of the railroad companies. The railroad companies are required to furnish all necessary facilities for caring for and handling the mails while in their custody. The act further provides that all railway common carriers are required to transport such mail matter as may be offered for transportation, etc., and shall be entitled to receive fair and reasonable compensation "for such transportation and for the service connected therewith."

The Interstate Commerce Commission, after a hearing, made an exhaustive report and determined that mail should be carried upon the basis of space, instead of weight. Upon that basis, the Commission fixed rates for

all services required to be performed by the act and declared that the land-grant railroads were entitled to eighty per cent. thereof under the law. It was urged before the Commission on behalf of these railroads that this provision of the law " should not apply to the distributing space in R. P. O. and apartment cars, because the service of carrying distributing facilities cannot properly be construed as transportation of the mails as defined in the law." But the Commission held otherwise. *Railway-Mail Pay,* 56 I. C. C. 1, 77. Thereupon, appellant filed its petition in the court below alleging the facts and praying judgment against the United States for $189,880.54 as compensation for the use of the distributing space upon the same ground as that urged before the Commission. The amount of the demand was arrived at by separating the car space said to be used for mail distributing purposes from the space devoted to storage purposes, and adding twenty per cent. to that portion of the eighty per cent. allowance which was claimed to be assignable to the distributing space. The Court of Claims sustained a demurrer to the petition and entered judgment of dismissal. 59 C. Cls. 524; 60 C. Cls. 183.

That the Commission is authorized by the act of 1916 to fix rates for the transportation of the mails, that the rates fixed by the Commission are reasonable, and that Congress has plenary power to determine the price at which the land-grant roads shall transport the mail, are propositions which are not here in dispute. The contention is that this power does not enable Congress to fix the pay of the land-grant roads for furnishing distributing space and facilities; but that these items under the requirement of the land-grant acts are separable from and in addition to transportation, and should be paid for at the same rates accorded other railroads.

Unmistakably, the act of 1916 authorized the Commission to do precisely what it did, namely, to determine the

fair and reasonable rates and compensation to be paid, upon a space-basis, for the transportation of mail matter " and the service connected therewith "; and, thereupon, to allow the land-grant roads eighty per cent. of those rates and compensation for like transportation " and all service . . . in connection therewith." It would do manifest violence to these plain words to say that Congress intended, in the one case, that the Commission should fix the compensation to be paid railroads generally for transportation, including service connected therewith, but did not intend, in the other case, although it used almost the same words, that eighty per cent. of that compensation, and no more, should be allowed the land-grant roads for like transportation and service.

But, it is urged that thus to construe the act of 1916 is to enlarge the authority of Congress under the land-grant acts so as to permit that body to require the land-grant roads, without compensation, to perform service in addition to that embraced within the word " transportation." It is said that railway postal cars originated after the passage of the land-grant acts. But it does not follow that such cars are not fairly within the meaning of those acts as essentially incident to transportation. The provision reaches into the future; and, while its meaning does not change, its application may well embrace new conditions and new instrumentalities which come within the scope of the terms employed. This is in accordance with the universal law of language. In a sense, words do not change their meaning; but the application of words grows and expands with the growth and expansion of society. Compare *South Carolina* v. *United States,* 199 U. S. 437, 448–449.

To transport any article involves, as a necessary incident, furnishing facilities for its transportation; and the character and extent of these facilities will depend upon the nature of the thing transported. Facilities appropri-

ately employed in the transportation of lumber, for example, would be wholly inappropriate in the transportation of live stock. The mail includes a variety of things gathered from and carried to innumerable places. Letters and parcels must be received, more or less piecemeal, and then assorted and put in convenient form for delivery at the places to which they are addressed; and, if the mails are to go forward with dispatch, this involves assortment and preparation for delivery in transit; and this, in turn, necessarily requires that facilities to that end must be provided.

Nor can we ignore the provision of the land-grant acts that the mails are to be transported " under the direction of the Postoffice Department." The authority is a continuing one and not to be limited to such methods of direction as were customary at the dates of the acts. The mail was to be transported " at all times " under this direction. The power of the Postoffice Department to direct the transportation is of the same quality as the power of Congress to fix the price, and includes not only the authority to say when the transportation shall take place and between what points, but to impose such conditions as are necessarily incident to the transportation, having regard to the peculiar nature of the things to be transported. We fully agree with the court below that the land-grant acts are not to be so narrowly construed as to render their operation impracticable. " When they declare that the mails shall be transported under the direction of the Post Office Department we think they imply more than the mere placing of the mails in bulk in a car to be carried between given termini. The bulk changes by additions to it and subtractions from it. The making of these additions and subtractions as the different stations are reached involves space additional to that occupied by the bulk itself. What is to be transported is not mere weight bulk or freight but the ' mails ' and the act must be construed to give effect to its purpose."

We fairly may assume, in the absence of any evidence to the contrary, that, in fixing the allowance to be paid to the land-grant roads at eighty per cent. of the fair and reasonable compensation to be paid railroads generally, Congress has given due weight to all the circumstances— not only to the kind and character of the service, but to the fact that the companies are required to furnish all facilities incidental thereto. In any event, it was for Congress to say what reduction should be made from the amount of full compensation in consideration of the land grants; and its action in that respect is not open to judicial review.

*Judgment affirmed.*