## UNITED STATES ET AL. *v.* GRIFFIN ET AL., RECEIVERS.

No. 63.  Argued November 19, 1937.  Reargued January 3, 1938.—Decided February 28, 1938.

Mr. *Edward M. Reidy*, with whom *Solicitor General Reed, Assistant Attorney General Jackson,* and *Messrs. Elmer B. Collins* and *Daniel W. Knowlton* were on the briefs, for appellants on the reargument and on the original argument.

Mr. *Moultrie Hitt,* with whom *Messrs. G. Kibby Munson* and *Gregory Hankin* were on the briefs, for appellees on the reargument and on the original argument.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

The sole question requiring decision is one of statutory construction: The Railway Mail Pay Act of July 28, 1916, c. 261, § 5, 39 Stat. 412, 425, 429, 430, provides that the Interstate Commerce Commission "shall establish by order a fair, reasonable rate or compensation to be received" by railroads for carrying the mail; [1] and authorizes the Commission to modify the order upon a "re-examination." The Urgent Deficiencies Act of October 22, 1913, c. 32, 38 Stat. 208, 219, 220 (amending Act of June 18, 1910, c. 309, 36 Stat. 539) declares that district courts shall have jurisdiction "of cases brought to enjoin, set

---

[1] "The Postmaster General is authorized and directed to adjust the compensation to be paid to railroad companies for the transportation and handling of the mails and furnishing facilities and services in connection therewith upon the conditions and the rates hereinafter provided." 39 U. S. C. § 524.

"All railway common carriers are hereby required to transport such mail matter as may be offered for transportation by the United States in the manner, under the conditions, and with the service prescribed by the Postmaster General and shall be entitled to receive fair and reasonable compensation for such transportation and for the service connected therewith." 39 U. S. C. § 541.

aside, annul or suspend in whole or in part any order of the Interstate Commerce Commission." May suit be brought under the Urgent Deficiencies Act to set aside an order refusing, upon "re-examination," to increase the allowance for railway mail compensation theretofore made to this carrier?

The suit was brought, under the Urgent Deficiencies Act, in the federal court for southern Georgia, by the receivers of the Georgia & Florida Railroad against the United States and the Interstate Commerce Commission, to set aside an order made May 10, 1933, under the Railway Mail Pay Act, Railway Mail Pay, Georgia & Florida R. Co., 192 I. C. C. 779; and to grant a permanent injunction. By that order the Commission had denied upon a "re-examination" an application further to increase the compensation allowed by the order of July 10, 1928. Railway Mail Pay, 144 I. C. C. 675. The 1928 order had, upon a "re-examination," increased the compensation originally fixed by order of December 23, 1919. Railway Mail Pay, 56 I. C. C. 1. As grounds for setting aside the order of May 10, 1933, the receivers alleged, among other things, that the order was unlawful, because the finding that the existing rates were fair and reasonable was without evidence to support it and contrary to the evidence and that the order will violate the Fifth Amendment by taking property without just compensation.

The jurisdiction of the court was not challenged; and the case was heard by three judges on the merits. A decree was rendered setting aside as unlawful the order of May 10, 1933, and directing the Commission to take further action. Additional hearings were then had by the Commission; and on February 4, 1936, it again declined to order any increase over that which had been allowed July 10, 1928. Railway Mail Pay, Georgia & Florida R. Co., 214 I. C. C. 66. The last order of the

Commission was assailed by a supplemental bill on the same grounds as that assailed in the original bill. The jurisdiction of the court was not challenged; the case was again heard on the merits by three judges; and a decree was entered setting aside the order of February 4, 1936, and directing the Commission to take "such further action in the premises as the law requires in view of the annulment and setting aside of" the order.

From that decree the United States and the Interstate Commerce Commission have appealed to this Court. Here, although answering to the merits, they challenged the jurisdiction of the District Court. Since lack of jurisdiction of a federal court touching the subject matter of the litigation cannot be waived by the parties, we must upon this appeal examine the contention; and, if we conclude that the District Court lacked jurisdiction of the cause, direct that the bill be dismissed. *United States* v. *Corrick*, 298 U. S. 435, 440. We at first thought that the District Court had jurisdiction, and ordered a reargument of the case on the merits. But, upon further consideration of the jurisdictional question, we are of opinion that the remedy provided by the Urgent Deficiencies Act is not applicable to this order.

*First.* The Railway Mail Pay Act terminated the system theretofore prevailing of service under voluntary contracts.[2] As embodied in United States Code, Title 39,

---

[2] Prior to the Act of 1916, the carriage of mail by railroads—with the exception of some aided by land grant—was held to be not compulsory "at adequate compensation to be judicially determined," *Atchison, T. & S. F. Ry.* v. *United States*, 225 U. S. 640, 650, but under contracts voluntarily entered into with the Postmaster General. *New York, N. H. & H. R. Co.* v. *United States*, 251 U. S. 123, 127. For the legislation prior to 1916 concerning compensation of railroads for carrying the mail, see Railway Mail Pay, 56 I. C. C. 1, 3–7. For the several proposals prior to 1916 to modify the laws governing such transportation, see Report of Postmaster General to Congress August 12, 1911, H. R. Doc. 105, 62d Congress, 1st Session; Senate

230

§§ 523 to 568, it provides in forty-six sections comprehensively for the character, means and methods of mail transportation; defines the authority of the Postmaster General; and describes the obligations of the railroads and their right to compensation, which is to be fixed by the Commission.

"The Interstate Commerce Commission is hereby empowered and directed to fix and determine from time to time the fair and reasonable rates and compensation for the transportation of such mail matter by railway common carriers and the services connected therewith, prescribing the method or methods by weight, or space, or both, or otherwise, for ascertaining such rate or compensation, and to publish the same, and orders so made and published shall continue in force until changed by the commission after due notice and hearing." 39 U. S. C. § 542.

"For the purpose of determining and fixing rates or compensation hereunder the commission is authorized to make such classification of carriers as may be just and reasonable and, where just and equitable, fix general rates applicable to all carriers in the same classification." 39 U. S. C. § 549.

"At the conclusion of the hearing the commission shall establish by order a fair, reasonable rate or compensation to be received, at such stated times as may be named in the order, for the transportation of mail matter and the service connected therewith, and during the continuance of the order the Postmaster General shall pay the carrier

Bill 7371, House Bill 23721, 62d Congress, 2d Session; Railway Mail Pay, Report of Joint Committee on Compensation for the Transportation of the Mail, August 31, 1914, H. R. Doc. 1155, 63d Congress, 2d Session; Senate Bill 6405, House Bill 17042, 63d Congress, 2d Session; Senate Bill 4175, House Bill 10242, 64th Congress, 1st Session.

from the appropriation for inland transportation by railroad routes such rate or compensation." 39 U. S. C. § 551.

Eleven sections of the act deal with the procedure on hearings before the Commission.[3] No provision is made for a judicial review. But provision is made for administrative review by "reëxamination" of an order.

"Either the Postmaster General or any such carrier may at any time after the lapse of six months from the entry of the order assailed apply for a reëxamination and thereupon substantially similar proceedings shall be had with respect to the rate or rates for service covered by said application, provided said carrier or carriers have an interest therein." 39 U. S. C. § 553.

There have been many administrative reviews by "reëxamination."[4] The case at bar appears to be the only

---

[3] Section 544 provides: "The procedure for the ascertainment of the rates and compensation shall be as provided in sections 545 to 554 of this title"; and § 554 provides: "For the purposes of Sections 524 to 568 of this title the Interstate Commerce Commission is hereby vested with all the powers which it is authorized by law to exercise in the investigation and ascertainment of the justness and reasonableness of freight, passenger, and express rates to be paid by private shippers."

[4] The first order fixing compensation for transportation of mail was made by the Commission December 23, 1919. Railway Mail Pay, 56 I. C. C. 1. By it rates were fixed on the general system of flat rates on a space basis, with higher rates for certain short lines less than 100 miles in length. Since then the Commission has made orders on applications for re-examination under 39 U. S. C. § 553, in many cases. Railway Mail Pay, New England Lines, 85 I. C. C. 157, on reargument, 95 I. C. C. 204, 104 I. C. C. 521; Railway Mail Pay, Certain Intermountain and Pacific Coast Short-Line Railroads, 95 I. C. C. 493, on reargument, 104 I. C. C. 521; Railway Mail Pay, Woodstock Ry. Co. et al., 96 I. C. C. 43, on reargument, 104 I. C. C. 521; Railway Mail Pay, Canadian Nat. Ry. et al., 109 I. C. C. 13; Railway Mail Pay, Alabama, Tenn. & No. Ry., 112 I. C. C. 151; Railway Mail Pay, Certain Intermountain and Pacific Coast Short

instance in which an attempt has been made to set aside a mail order by suit under the Urgent Deficiencies Act.

*Second.* The Urgent Deficiencies Act provides a method of judicial review of orders of the Interstate Commerce Commission possessing the following extraordinary features: (1) The original hearing in the district court is not before a single judge, but before three, of whom one must be a circuit judge; (2) From the decree of the district court as so constituted a direct appeal to the Supreme Court is granted as of right, instead of a review by a circuit court of appeals; (3) Upon both the trial court and the Supreme Court rests the obligation to give the case precedence over others. These features were first introduced by the Expediting Act of 1903, 32 Stat. 823, for suits by the United States to enforce the antitrust and commerce laws. They were extended by the Hepburn Act of 1906, § 5, 34 Stat. 584, 590, 592, to suits to enforce or to set aside orders of the Interstate Commerce Commission. When that jurisdiction was vested in the Commerce Court provisions with like effect were pro-

Line Railroads, 120 I. C. C. 439, on reconsideration, 151 I. C. C. 734; Railway Mail Pay, Winston-Salem Southbound Ry., 123 I. C. C. 33; Railway Mail Pay, 144 I. C. C. 675; Railway Mail Pay, 151 I. C. C. 734; Railway Mail Pay, Georgia & Florida R., 192 I. C. C. 779, on rehearing, 214 I. C. C. 66.

A number of other decisions relating to railway mail pay have also been made. Railway Mail Pay, Certain Short Lines, 165 I. C. C. 774; Railway Mail Pay, Jacksonville & H. R. et al., 174 I. C. C. 781; Railway Mail Pay, Illinois Terminal Co., 174 I. C. C. 796; Railway Mail Pay, Macon, D. & S. R. et al., 185 I. C. C. 715; Railway Mail Pay, N. J. & N. Y. R., 198 I. C. C. 504; Railway Mail Pay, Piedmont & No. Ry., 216 I. C. C. 467.

Similar orders have been entered under the Electric Railway Mail Pay Act, 40 Stat. 742, 748. Electric Railway Mail Pay, 58 I. C. C. 455; Electric Railway Mail Pay, 98 I. C. C. 737. Compare Transmission of Mail by Pneumatic Tubes in the City of New York, 85 I. C. C. 207.

vided for cases coming before it. 36 Stat. 539. To its jurisdiction the district court succeeded, with these features, under the Urgent Deficiencies Act.

In the opinion of Congress jurisdiction with the extraordinary features of the Urgent Deficiencies Act was justified by the character of the cases to which it applied—cases of public importance because of the widespread effect of the decisions thereof. In such cases Congress sought to guard against ill-considered action by a single judge and to avert the delays ordinarily incident to litigation. In construing the Act, this Court concluded that despite the broad language used in the Commerce Court Act, Congress could not have intended to include in this special jurisdiction suits to set aside every kind of order issued by the Commission. For substantially every decision, and every other kind of action by the Commission is expressed in, or is followed by, an order; and many of the orders are obviously not of such public importance and widespread effect as to justify, in cases affecting them, the extraordinary features of the Urgent Deficiencies Act.

The Commerce Court had (36 Stat. 539) jurisdiction "over all cases of the following kinds":

"First. All cases for the enforcement, otherwise than by adjudication and collection of a forfeiture or penalty or by infliction of criminal punishment, of any order of the Interstate Commerce Commission other than for the payment of money.

"Second. Cases brought to enjoin, set aside, annul, or suspend in whole or in part any order of the Interstate Commerce Commission. . . ."

This Court concluded that, as the intent of Congress was "to relieve parties in whole or in part from the duty of obedience to orders which are found to be illegal," there was jurisdiction to set aside only those kinds of orders which there was jurisdiction to enforce; that a distinction must be drawn between "affirmative" and "negative"

orders; and that jurisdiction under the Commerce Court Act was applicable only to "affirmative" orders. *Procter & Gamble Co.* v. *United States,* 225 U. S. 282; *Hooker* v. *Knapp,* 225 U. S. 302. Since the abolition of the Commerce Court, that rule has been consistently followed in cases brought under the Urgent Deficiencies Act. *Lehigh Valley R. Co.* v. *United States,* 243 U. S. 412; *Piedmont & Northern Ry. Co.* v. *United States,* 280 U. S. 469; *Standard Oil Co.* v. *United States,* 283 U. S. 235; *United States* v. *Corrick,* 298 U. S. 435. Compare *Delaware & Hudson Co.* v. *United States,* 266 U. S. 438; *United States* v. *Los Angeles & Salt Lake R. Co.,* 273 U. S. 299.

The order of February 4, 1936, here assailed, does not command either the Government or the Railroad to do anything. It is simply a refusal, upon a second "re-examination" of the order of July 11, 1928, further to increase the compensation thereby awarded upon a "re-examination" of the compensation originally awarded by the order made December 23, 1919. The order assailed, being a refusal to change the existing status, was a "negative" order. The District Court lacked jurisdiction to set it aside, and should have dismissed the bill.

*Third.* Congress cannot be assumed to have made the extraordinary remedy of the Urgent Deficiencies Act applicable for the determination of the validity of railway mail pay orders, even if "affirmative." The issue here is whether the existing mail revenue of $35,728 should be increased for the year by $31,227. There is no wide public interest in its speedy determination. There is no danger of temporarily interrupting the mail service through the improvident issue of an injunction by a single judge. Only the method or amount of payments currently to be made would be affected. Such orders are in character unlike those under the Boiler Inspection Act, 36 Stat. 913, as amended, 38 Stat. 1192, 43 Stat. 659, and the Inland Waterways Corporation Act, 43 Stat. 360, 361,

as amended, 45 Stat. 978, 48 Stat. 968, of which jurisdiction was taken although the statutes contained no provision for judicial review.[5]

In *Great Northern Ry. Co.* v. *United States,* 277 U. S. 172, we held that there was not jurisdiction under the Urgent Deficiencies Act of a suit to set aside an order of the Interstate Commerce Commission made under Title II of the Transportation Act of 1920 determining the amount due a railroad on the Government's guaranty of income for the period following relinquishment of federal control. And in *United States* v. *Los Angeles & Salt Lake R. Co.,* 273 U. S. 299, we held that there was not jurisdiction under the Urgent Deficiencies Act of a suit to set aside a final order under the Valuation Act, even though that statute was enacted as an amendment to the Interstate Commerce Act itself. 37 Stat. 701, as amended, 41 Stat. 456, 474, 493, 42 Stat. 624.[6]

In recent years the field of administrative determination has been widely extended; and the duty of making many of these determinations has been imposed upon the Interstate Commerce Commission.[7] Some of the statutes contain specific provision making applicable ju-

[5]*Baltimore & Ohio R. Co.* v. *United States,* 293 U. S. 454; *United States* v. *Illinois Central R. Co.,* 291 U. S. 457; compare *Mississippi Valley Barge Line Co.* v. *United States,* 292 U. S. 282.

[6] Compare *United States* v. *Illinois Central R. Co.,* 244 U. S. 82; *Delaware & Hudson Co.* v. *United States,* 266 U. S. 438; *United States* v. *Atlanta, B. & C. R. Co.,* 282 U. S. 522.

[7] Among the statutes delegating to the Commission administrative duties in addition to those which it performs under the Interstate Commerce Act are: *Postal Service:* Railway Mail Pay Act, 39 Stat. 412, 425, 430; Electric Railway Mail Pay Act, 40 Stat. 742, 748; New York City Pneumatic Tube Mail Pay Act, 42 Stat. 652, 661; Fourth Class Mail Regulations Act, 43 Stat. 1053, 1067, as amended, 45 Stat. 940, 942; Air Mail Act, 48 Stat. 933, 935, as amended, 48 Stat. 1243, 49 Stat. 614. *Railroad Operation:* Safety Appliance Act, 27 Stat. 531, as amended, 32 Stat. 943, 36 Stat. 298; Boiler Inspection Act, 36 Stat. 913, 914, as amended, 38 Stat. 1192, 43 Stat. 659;

236

risdiction under the Urgent Deficiencies Act. This is true of the Emergency Railroad Transportation Act of 1933, 48 Stat. 211, 216, as amended, 49 Stat. 376, and of the Motor Carrier Act of 1935, 49 Stat. 543, 550. Compare Transportation of Explosives Act (Criminal Code, § 233), 35 Stat. 554, 555, as amended, 35 Stat. 1088, 1135, 41 Stat. 1445. It is true likewise of several statutes under which the determinations are to be made by other administrative tribunals. Shipping Act of 1916, 39 Stat. 728, 738, superseded by 49 Stat. 1985 (United States Shipping Board); Packers & Stockyards Act of 1921, 42 Stat. 159, 168 (Secretary of Agriculture); Perishable Agricultural Commodities Act of 1930, 46 Stat. 531, 535 (Secretary of Agriculture); Emergency Railroad Transportation Act of 1933, *supra* (Federal Coördinator of Transportation); Communications Act of 1934, 48 Stat. 1064, 1093, as amended, 50 Stat. 189 (Federal

Locomotive Ash Pan Act, 35 Stat. 476; Accident Investigation Act, 36 Stat. 350, 351; Hours of Service Act, 34 Stat. 1415; Railway Labor Act, 44 Stat. 577, as amended, 48 Stat. 1185, 49 Stat. 1189; Transportation Act of 1920, Title II, 41 Stat. 456, 457, as amended, 44 Stat. 1450; Emergency Railroad Transportation Act of 1933, 48 Stat. 211, 216, as amended, 49 Stat. 376. *Railroad Finance:* Clayton Antitrust Act, 38 Stat. 730, 734, as amended, 43 Stat. 939, 48 Stat. 1102; Reconstruction Finance Corporation Act, 47 Stat. 711, as amended, 48 Stat. 20, 99, 120, 1109, 49 Stat. 1, 796, 50 Stat. 5, 357; Bankruptcy Act, § 77, 47 Stat. 1474, as amended, 49 Stat. 911, 1969. *Miscellaneous:* Transportation of Explosives Act (Criminal Code, § 233), 35 Stat. 554, 555, as amended, 35 Stat. 1088, 1135, 41 Stat. 1445; Standard Time Zone Act, 40 Stat. 450; St. Louis Bridge Act, 43 Stat. 7, 8; Inland Waterways Corporation Act, 43 Stat. 360, as amended, 45 Stat. 978, 48 Stat. 968, 49 Stat. 958; Radio Act of 1927, 44 Stat. 1162, 1173, superseded by 48 Stat. 1064; Motor Carrier Act of 1935, 49 Stat. 543, 550.

Although enacted as Part II of the Interstate Commerce Act, the Motor Carrier Act of 1935 is included in this list because it seems more properly classified as a complete and independent statute than as merely an amendment to the Act of 1887.

Communications Commission).[8]  The orders for which review is provided by each of these statutes are like the orders under the Interstate Commerce Act fixing rates payable by shippers.  Improper injunctive relief of such orders or delay in final determination of their validity may seriously affect the public interest by preventing or obstructing action under those statutes.

While the compensation fixed in a railway mail pay order is ordinarily measured by a rate, the ultimate question determined by the Commission is, as in the *Great Northern* case, the proper compensation to be paid by the Government to the railroad for services and the use of its property—the *quantum meruit* for carrying the mail.  There is nothing in the history of the Railway Mail Pay Act which requires that the Urgent Deficiencies Act be made applicable to the determination of the validity of such orders.[9]

---

[8] Compare Merchant Marine Act of 1936, 49 Stat. 1985, 1987 (United States Maritime Commission).  A similar procedure has also been provided for certain suits to enjoin the enforcement or operation of state and federal statutes on the ground that they are unconstitutional.  Judicial Code, § 266, 36 Stat. 557, 1162, as amended, 37 Stat. 1013, 43 Stat. 938; Judiciary Act of 1937, 50 Stat. 751, 752.

[9] The provision calling for the Interstate Commerce Commission to fix the rates at which the mail is to be carried was introduced in the Senate as an amendment to the bill by Senator Cummins of Iowa.  In answer to questions as to "whether the amendment provides for an appeal in this case as in other rate-making cases before the Interstate Commerce Commission," he stated: "I think it would permit the same review. . . .  There would be the same remedy precisely under my amendment for the railway companies that now exists in the case of the establishment of a rate for a private shipper. . . .  It is provided for in just the same way the present law does."  53 Cong. Rec., 9694–95.  No further reference to judicial review occurs in the debates on this provision in either House; and no reference to judicial review was made in the report of the Committee of either House, nor in that of the Conference Committee whose recommendations were adopted.  See Sen. Rep. 459, H. R. Rep. 91, H. R. Rep. 981, 64th Cong., 1st Sess.

*Fourth.* The absence in the Railway Mail Pay Act of a provision for judicial review and the denial of jurisdiction under the Urgent Deficiencies Act do not preclude every character of judicial review. If the Commission makes the appropriate finding of reasonable compensation but fails, because of an alleged error of law, to order payment of the full amount which the railroad believes is payable under the finding, the Court of Claims has jurisdiction of an action for the balance, as the claim asserted is one founded upon a law of Congress. *Missouri Pacific R. Co.* v. *United States,* 271 U. S. 603. Compare *United States* v. *New York Central R. Co.,* 279 U. S. 73, affirming 65 Ct. Cl. 115, 121.[10] And since railway mail service is compulsory, the Court of Claims would, under the general provisions of the Tucker Act, have jurisdiction also of an action for additional compensation if an order is confiscatory. *United States* v. *Great Falls Mfg. Co.,* 112 U. S. 645; *North American Transportation & Trading Co.* v. *United States,* 253 U. S. 330, 333; *Jacobs* v. *United States,* 290 U. S. 13, 16. Moreover, as district courts have jurisdiction of every suit at law or in equity "arising under the postal laws," 28 U. S. C., § 41 (6), suit would lie under their general jurisdiction if the Commission is alleged to have acted in excess of its authority, or otherwise illegally. Compare *Powell* v. *United States,* 300 U. S. 276, 288, 289. But a suit under the Urgent Deficiencies Act to set aside an order concerning mail pay is not primarily one against the Commission. Primarily, it is a suit against the

---

[10] Other decisions of the Court of Claims under the Railway Mail Pay Act of 1916 are: *Chicago & E. I. Ry.* v. *United States,* 63 Ct. Cl. 585; *Nevada County N. G. R. Co.* v. *United States,* 65 Ct. Cl. 327; *Chicago & E. I. Ry. Co.* v. *United States,* 72 Ct. Cl. 407; *Macon, D. & S. R. Co.* v. *United States,* 78 Ct. Cl. 251; 79 Ct. Cl. 298. Compare *Pere Marquette Ry. Co.* v. *United States,* 59 Ct. Cl. 538; *New Jersey & N. Y. R. Co.* v. *United States,* 80 Ct. Cl. 243

United States.[11] And the United States can be sued only when authority so to do has been specifically conferred.

The Railway Mail Pay Act does not confer that authority.

Decree reversed—with direction to the District Court to dismiss the bill without costs to either party.

*Reversed.*

MR. JUSTICE BLACK agrees with the result and fully with all of the opinion except paragraph *Fourth.*

MR. JUSTICE CARDOZO and MR. JUSTICE REED took no part in the consideration or decision of this case.

---

[11] Compare Judicial Code § 211, 36 Stat. 542, 1150, as amended, 38 Stat. 219, 28 U. S. C. § 48; *Lambert Run Coal Co.* v. *Baltimore & Ohio R. Co.,* 258 U. S. 377, 382.