ERIE R. CO. et al. v. UNITED STATES.

Civil Action No. 768.

District Court, S. D. Ohio, E. D.

Dec. 8, 1945.

J. P. Canney, of Cleveland, Ohio, Samuel P. Delisi, of Pittsburgh, Pa., and Leo P. Day, of Chicago, Ill., for complainants.

Nelson Thomas, Atty. I. C. C., and E. M. Reidy, Asst. Chief Counsel I. C. C., both of Washington, D. C., and Wendell Berge, Asst. Atty. Gen., for defendant.

Before ALLEN, Circuit Judge, and UNDERWOOD and DRUFFEL, District Judges.

PER CURIAM.

This suit was originally brought to set aside an order of the Interstate Commerce Commission which required the plaintiffs to reduce their rates for the transportation of scrap iron in carload lots from South Bend, Indiana, to Mansfield, Ohio; from Hastings, Michigan, to Massillon, Ohio, and from Lansing, Michigan, to Sandusky, Ohio, to "70% of the basic scale of rates on iron and steel articles." In oral argument counsel for the Commission conceded that no evidence was introduced which tended to establish the unreasonableness of the plaintiffs' rates, and the sole basis of

reduction in the rates was the fact that in other litigated cases involving other parties the Commission had established the 70% basis as a reasonable rate. This court enjoined enforcement of the order upon the ground that it was arbitrary and sustained by no evidence whatever. 59 F.Supp. 748. Thereafter the Commission, on its own motion, reopened the case for rehearing and took further evidence. The plaintiffs appeared, specially objecting to the jurisdiction of the Commission, and introduced no evidence. The majority of the Commission in its report and order on rehearing reinstated the requirements of its previous order that the plaintiffs establish the 70% basis on scrap iron between the points involved on or before July 9, 1945. The report was concurred in by six members of the Commission, and two other members concurred as to rates for the future. Two members of the Commission disagreed with the finding of the majority that the assailed rates were or will be unreasonable in the future, and one commissioner dissented. The plaintiffs, by leave of court, filed a supplemental bill of complaint for the purpose of setting aside the Commission's order upon rehearing, contending that the issues on rehearing are res judicata; that no evidence supports the order on rehearing, and that the order is arbitrary and capricious because it is not sustained by the record.

As to the point that the controversy is res judicata, the plaintiffs urge that the Commission has no further jurisdiction in this case since the court has reviewed and set aside and enjoined the enforcement of the Commission's original order. It cites in support of this contention Title 49 U.S.C. § 15(2), 49 U.S.C.A. § 15(2), which declares that orders of the Commission shall continue in force until its further order "unless the same shall be suspended or modified or set aside by the commission, or be suspended or set aside by a court of competent jurisdiction." Since this court set aside the Commission's order the plaintiffs contend that the Commission had no authority to proceed in the case.

We think this contention has no merit. The statute specifically provides that the Commission is authorized to "suspend or modify its orders upon such notice and in such manner as it shall deem proper." Section 16(6). This provision invests the Commission with a continuing jurisdiction, and the provision in § 15(2)

above quoted does not create nor contemplate any limitation upon the continuing jurisdiction. It provides that after an order of the Commission is suspended or set aside by a court, it is no longer effective. But neither expressly nor by necessary implication does it provide that after the court has set aside one of its orders the Commission can take no further action with reference to the subject matter of the order. In this case the construction contended for would result in the absurd conclusion that when a court has determined that the Commission erred in issuing an order not based on evidence, the Commission is not empowered to acquiesce in the court's ruling and to reopen the case for the taking of evidence. Such a result is neither required nor authorized by the statute.

We are strengthened in this conclusion by the fact that the Supreme Court has sustained the action of the Commission in instances where an order has been set aside because of inadequate findings and thereafter the Commission has heard additional evidence and made additional findings. Cf. United States v. Capital Transit Co., 65 S.Ct. 278; United States v. Griffin, Receiver, 303 U.S. 226, 58 S.Ct. 601, 82 L.Ed. 764; Baltimore & Ohio R. Co. v. United States, D.C. 15 F.Supp. 674; Thompson v. United States, D.C., 20 F.Supp. 827.

We conclude that the Commission was clearly authorized to proceed with the rehearing in this case.

The order issued by the Commission awarded reparation to the claimant in the sum of $525.48 with interest, and also prescribed a lower basis of rates for the future. The complainant before the Commission has acquiesced in our ruling reversing the Commission's original order, and does not appear here, the Commission having reopened the case of its own motion. This fact is urged by the plaintiffs as requiring vacation of the present order of the Commission. But the three-judge court has no jurisdiction in the case of reparation orders. Brady v. Interstate Commerce Commission, D.C., 43 F.2d 847. Under the Interstate Commerce Act, Title 49 U.S.C. § 16(2), 49 U.S.C.A. § 16(2), after the Commission has made a reparation order the complainant is authorized to file a petition in the District Court, which proceeds as other civil suits for damages, with exception of the fact that the findings and orders of the Commission are prima

facie evidence of the facts therein stated. The statute makes a clear distinction between reparation orders and orders made by the Commission in the exercise of its jurisdiction to regulate interstate commerce. This court has no authority to proceed with reference to reparation matters. Its jurisdiction extends only to adjudicating cases brought for the benefit of the public. Baltimore & Ohio R. Co. v. United States, supra.

■ It follows that the absence of the complainant from these proceedings has no bearing on the propriety of the order.

A more serious question is presented as to whether facts have been adduced which support the order.

While the Commission, in its report, details the additional evidence showing the relation of the rates on scrap iron and steel to points in Ohio and the iron and steel scale, it made the following statement:

"Neither at the original hearing nor at the rehearing did the complainant herein undertake to present evidence relating to traffic and transportation conditions within all of official territory or within that territory as compared with other territories. In the circumstances here disclosed, we do not believe such evidence is indispensable or that its absence precludes a finding that the assailed rates are unreasonable. Transportation and traffic conditions throughout official territory have been the subject of exhaustive inquiry by us in numerous proceedings of broad scope, such as Iron and Steel Articles, supra; Eastern Livestock Cases of 1926, 144 I.C.C. 731; Eastern Class Rate Investigation, 164 I. C.C. 314; Furniture, 177 I.C.C. 5; Newsprint Paper Investigation, 197 I.C.C. 738; Eastern Fertilizer Cases, 198 I.C.C. 483; Consolidated Stone Cases, 200 I.C.C. 65; Eastern Brick Rates, 218 I.C.C. 59; No. 28190, New Automobiles in Interstate Commerce, — I.C.C. —. In the cases cited we have drawn the general conclusion that official territory is a homogenous rate region in which the conditions of transportation and traffic require, or at least justify, uniform levels of rates, with certain exceptions and qualifications which are explained in the reports but which are not here pertinent."

It added:

"Evidence to establish in a satisfactory manner the nature of the transportation and traffic conditions throughout an extensive territory is necessarily of an elaborate character and requires the services of numerous transportation experts; i. e., those experienced and skilled in the fields of traffic, operation, engineering, cost finding and statistics. To assemble and produce such evidence is expensive and time-consuming. Having examined such evidence carefully and announced our conclusions thereon, we believe that we are entitled to take notice of those conclusions in cases arising thereafter, and until, upon further broad investigation, such conclusions are shown to be wrong."

■ With reference to these views, so emphatically reiterated by the Commission, we adhere to our position expressed on the original review of this case. We think it is not the law that carriers are compelled to adjust their rates to the 70% basis in official territory because in other cases involving other rates the Commission has found rates in excess of 70% unreasonable.[1]

The Commission states in effect that within official territory, which, roughly speaking, is the area in the United States east of the Mississippi River and north of the Ohio and Potomac Rivers, also embracing all of West Virginia and all except the extreme southern part of Virginia, it intends to apply the conclusion reached in one group of litigated cases to other cases in which different issues and different litigants are involved. It thus reiterates the holding which we reversed in the original case, that proof need not be offered of relevant material facts because the Commission can assume the existence of these facts from other litigated cases.

■ This reasoning, as formerly held, is entirely erroneous. "Facts conceivably known to the Commission, but not put in evidence, will not support an order." The Chicago Junction Case, 264 U.S. 258, 263, 44 S.Ct. 317, 319, 68 L.Ed. 667; United States v. Abilene & Southern R. Co., 265 U.S. 274, 44 S.Ct. 565, 68 L.Ed. 1016. There

---

[1] In its opinion on the original hearing the Commission stated: "When we have so clearly indicated that in our opinion rates in excess of the seventy percent basis in official territory are unreasonable, carriers should not be permitted to refuse to adjust their rates to that basis until they are ordered so to do."

has been no relaxation of this rule except in cases where the evidence was used against litigants who had been parties to the proceedings in which the evidence was originally presented. Crichton v. United States, 323 U.S. 684, 65 S.Ct. 559; Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 157, 158, 61 S.Ct. 908, 85 L.Ed. 1251. However, the order of the Commission, though endeavored to be sustained by erroneous legal reasoning, is supported by the evidence. Testimony was given with reference to various rates in central territory, which is one of the sub-territories of official territory, raising a presumption that conditions of traffic and transportation are the same. These rates supported the conclusion that the present carriers' rates are unreasonable. Since this testimony was not rebutted by the carriers, its authenticity stands as admitted.

The order is affirmed.