**BONDHOLDERS PROTECTIVE COMMITTEE (of the 3¼ General Mortgage Bonds of the Central Railroad Company), Appellant**

v.

**INTERSTATE COMMERCE COMMISSION.**

No. 18356.

United States Court of Appeals, Third Circuit.

Argued June 18, 1970.

Decided Sept. 29, 1970.

Allan L. Tumarkin, Newark, N. J., for appellant.

Jerome E. Sharfman, Atty., I.C.C., Washington, D. C., (Robert W. Ginnane, Gen. Counsel, I.C.C., on the brief) for appellee.

Before BIGGS, STALEY and ADAMS, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

This appeal presents a novel issue of statutory construction involving our parallel consideration of Section 77 of the Bankruptcy Act, 11 U.S.C. § 205, and the Urgent Deficiencies Act, 28 U.S.C. §§ 2321–2325. The specific problem before us concerns the proper forum for judicial review of an Interstate Commerce Commission order under Section 77(p) of the Bankruptcy Act granting to one party and denying to another leave to solicit authorizations to represent and act for a class of creditors in a railroad reorganization.

I.

On or about March 22, 1967, the Central Railroad Company of New Jersey

filed a Section 77 petition for reorganization in the district court. The plaintiff-appellant (Marx Committee) applied to the Interstate Commerce Commission (ICC) pursuant to Section 77(p) for permission to solicit authorizations to represent and act for the holders of Central Railroad's 3.25% general mortgage bonds in the reorganization proceedings. A similar application was made by a rival group of bondholders (the Saltzberg Committee). The ICC denied the application of the Marx Committee and granted that of the Saltzberg Committee.[1]

The Marx Committee then filed suit against the ICC in the district court, contending that the ICC order was contrary to law and seeking to have it set aside or, in the alternative, to have itself substituted for the Saltzberg Committee as the sole representative of the 3.25% bondholders. The sole basis for jurisdiction alleged in the complaint was Section 1336(a), Title 28, U.S.C., but it became evident soon thereafter that the Marx Committee sought to have the ICC's representation order reviewed by a three-judge court to be convened pursuant to the Urgent Deficiencies Act, 28 U.S.C. §§ 2321–2325. The district court dismissed the action for want of jurisdiction over the subject matter. In the course of oral argument prior to the dismissal Chief Judge Augelli expressed his view that the matter was not reviewable in a plenary action before a three-judge court but that it could be reviewed only by the bankruptcy court in the context of the reorganization proceedings. Accordingly, the order dismissing the action was entered "without prejudice to the plaintiff's right to seek the same relief by filing an appropriate application in the bankruptcy proceeding." The Marx Committee, however, chose not to heed

the district court's suggestion and this appeal followed.

The statutory provisions directly pertinent to this appeal are as follows. Section 1336(a), Title 28, U.S.C., provides:

"*Except as otherwise provided by Act of Congress*, the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in any part, *any order of the Interstate Commerce Commission*." (Emphasis added).

Section 2321, Title 28, U.S.C., provides:

"The procedure in the district courts in actions to enforce, suspend, enjoin, annul or set aside in whole or in part *any order of the Interstate Commerce Commission* other than for the payment of money or the collection of fines, penalties and forfeitures, shall be as provided in this chapter." (Emphasis added).

And Section 2325, Title 28, U.S.C., provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution, in whole or in part, of *any order of the Interstate Commerce Commission* shall not be granted unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title." (Emphasis added).

Finally, Section 77(a) of the Bankruptcy Act, 11 U.S.C. § 205(a), provides in pertinent part:

"If the [reorganization] petition is so approved, the court in which the order is entered shall, during the pendency of the proceedings under this section and for the purposes thereof, have *ex-*

---

1. The Marx Committee had also petitioned the bankruptcy court for leave to intervene in a representative capacity in the reorganization proceedings pursuant to Section 77(c) (13) of the Bankruptcy Act. The arguments on intervention were heard after the ICC's Section 77(p) order, and the transcript of the hearings before

the ICC and the report of the ICC were made part of the record in the intervention hearing. The bankruptcy court denied leave to intervene and we affirmed. In the Matter of the Central Railroad Company of New Jersey, 429 F.2d 507 (3 Cir. 1970).

*clusive jurisdiction of the debtor and its property wherever located, \* \*."* (Emphasis added).

The positions of the parties in this court can be tersely summarized. In arguing that the ICC's representation order under Section 77(p) of the Bankruptcy Act should be reviewed by a three-judge court, the Marx Committee relies exclusively upon the express terms of Sections 1336(a), 2321 and 2325 of Title 28, particular emphasis being put upon the inclusive phrase "any order of the Interstate Commerce Commission" which recurs in each of the three sections.[2] The ICC on the other hand argues that Sections 2321 and 2325 are merely "procedural" and not jurisdictional in character, that Section 1336(a) of Title 28 is applicable only where Congress has not "otherwise provided," and that Congress has here otherwise provided by virtue of that portion of Section 77(a) of the Bankruptcy Act which vests in the reorganization court "exclusive jurisdiction of the debtor and its property \* \* \*."[3]

For reasons which follow we agree with the district court and hold that ICC orders under Section 77(p) of the Bankruptcy Act are not reviewable by a three-judge court.

## II.

The history and legislative purpose of the three-judge court provisions of the Urgent Deficiencies Act, of central relevance here, were considered extensively and in detail by the Supreme Court in United States v. I.C.C., 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949): "The provisions of the Urgent Deficiencies Act here considered derive from a 1910 congressional enactment creating the Commerce Court, defining its powers

and providing for review of its judgments. That court was given jurisdiction of all actions to enjoin, set aside and modify Commission orders. Section 2 provided for direct appeals from the Commerce Court to the Supreme Court. *The purpose of creating the Commerce Court with such direct appeals was the expedition of final determinations of the validity of certain types of Commission orders. This expedition was sought for orders of national or widespread interest, such, for example, as railroad rate orders.* Congress saw the necessity for an accelerated appellate procedure to prevent the railroads from nullifying the effect of such orders in prolonged litigation. The Commerce Act itself indicated that *the same expedition necessary in cases affecting the public generally was not necessary in other kinds of cases involving 'local and isolated questions which arise in the ordinary courts.'* \* \* \*

"Provisions of the Urgent Deficiencies Act of 1913 abolished the Commerce Court and transferred its jurisdiction to district courts composed of three judges. In considering this Act Congress was urged to bear in mind the necessity for providing a forum that could expeditiously review *Commission orders of widespread importance.* \* \* \*" 337 U. S. at 441–442, 69 S.Ct. at 1419 (Emphasis added, footnotes omitted).

■ The foregoing exposition of the legislative history of the Urgent Deficiencies Act makes clear that the purpose of the Act extends only to cases of general public importance, and taking this as the appropriate yardstick it would appear that the district court was correct in its conclusion that the instant case was not appropriate for a three-judge court. We reiterate that the

---

2. It is not contended by the ICC and it does not otherwise appear that the exceptions enumerated in the latter portion of Section 2321 are relevant to the instant case.

3. Section 77(a) gives such jurisdiction to "the court in which the [reorganization]

order \* \* \* is entered." The word "court" refers here to the bankruptcy court and not merely to the judicial district in which the order is entered. See *e. g.,* Chicago, R. I. & Pac. Ry. v. City of Owatonna, 120 F.2d 226, 227 (8 Cir. 1941).

Marx Committee seeks review of an ICC order concerning who shall have the right to represent a particular class of creditors in a railroad reorganization proceeding. While such an order might well be of crucial importance to the class of creditors directly affected thereby, it would be most difficult to characterize the matter as possessing national or general public significance.

We are, of course, not unmindful of the ancient canon of statutory construction that where a statute is clear and unambiguous on its face any resort to legislative intent is unwarranted. 2 Sutherland on Statutory Construction § 4502, at 316 (Horack ed. 1943); Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917); Hamilton v. Rathbone, 175 U.S. 414, 419, 20 S.Ct. 155, 44 L.Ed. 219 (1899). And indeed, as the Marx Committee contends, the Urgent Deficiencies Act refers clearly and plainly to "any order of the Interstate Commerce Commission." However, the Supreme Court itself in the course of construing the Act has resorted freely to a consideration of its legislative history and this, we think, permits us to do the same thing.

For example, in United States v. Griffin, 303 U.S. 226, 58 S.Ct. 601, 82 L.Ed. 764 (1938), the Court held that ICC orders setting mail rates under authority of the Railway Mail Pay Act of 1916, 39 Stat. 412, 425, 429 and 430, are not reviewable by an Urgent Deficiencies Act

three-judge court. The Court offered several alternative grounds for its decision, two being that the Railway Mail Pay Act did not specifically provide for judicial review and that the purposes of the Urgent Deficiencies Act would not be served by its application to an ICC mail rate order. Writing for the Court, Mr. Justice Brandeis stated that: "Congress cannot be assumed to have made the extraordinary remedy of the Urgent Deficiencies Act applicable for the determination of the validity of railway mail pay orders, even if 'affirmative.' The issue here is whether the existing mail revenue of $35,728 should be increased for the year by $31,227. *There is no wide public interest in its speedy determination.* * * * *"* 303 U.S. at 234, 58 S.Ct. at 605 (emphasis added). Thus the Court found the Urgent Deficiencies Act inapplicable notwithstanding the Act's broad reference to "any order of the Interstate Commerce Commission."

The instant case lends itself directly to the sort of analysis employed by Mr. Justice Brandeis in *Griffin.* Section 77(p) of the Bankruptcy Act contains no express provision for judicial review and, as stated above, ICC orders pursuant to Section 77(p) are not of national or wide public interest.[4, 5]

### III.

An independent analysis of the Bankruptcy Act confirms the view that ICC orders under Section 77(p) are reviewa-

---

4. Cf. Chicago & Northwestern Ry. v. United States, 52 F.Supp. 65, 67 (N.D. Ill.1943):

> "Reason, as well as authority, supports this view that appeal from Commission orders in bankruptcy proceedings should be limited to the district court sitting in bankruptcy."

The *Chicago & Northwestern Ry.* case is a further instance where the Supreme Court has countenanced a disregard for the literal language of the Urgent Deficiencies Act. In that case the debtor railroad brought suit against the ICC seeking three-judge review of a plan of reorganization previously approved by the ICC under Section 77(a) of the Bankruptcy Act. The district court conceded

the "seemingly applicable language" of the three-judge court statute to "any order" of the ICC but held nevertheless that an appeal from the ICC's approval of a plan of reorganization lies only to a single judge sitting in bankruptcy. 52 F.Supp. at 67. The Supreme Court affirmed *per curiam,* 320 U.S. 718, 64 S.Ct. 369, 88 L.Ed. 422 (1943).

5. The appellant has cited the case of N. Y., N. H. & H. R. Co. Bondholders Committee v. United States, 289 F.Supp. 418 (S.D.N.Y.1968), vacated sub nom New Haven Inclusion Cases, 399 U.S. 392, 90 S.Ct. 2054, 26 L.Ed.2d 691 (1970). The cited case does not persuade us to change the conclusions which we reach here.

ble only by a single district judge presiding over the reorganization proceedings. Section 77(a) of the Bankruptcy Act vests in the reorganization court "exclusive jurisdiction of the debtor and its property wherever located, * * *", including "full and complete power not only over the debtor and its property, but also, as a corollary, over any rights that may be asserted against it." Callaway v. Benton, 336 U.S. 132, 147, 69 S.Ct. 435, 93 L.Ed. 553 (1949). Cf. New Haven Inclusion Cases, 399 U. S. 392, 420, 90 S.Ct. 2054, 26 L.Ed. 2d 691 (1970). Under Section 77(c) (12) of the Act, the reorganization court has the power to grant allowances for reasonable expenses incurred by a committee or other representative of creditors, and such allowances are payable "out of the debtor's estate." Thus, the ICC's determination under Section 77(p) respecting which committee or committees shall be allowed to participate in the reorganization proceedings in a representative capacity bears substantially, albeit indirectly, upon the reorganization court's jurisdiction over the debtor's property, and this suggests the propriety of review of such orders by the reorganization court. Cf. Reconstruction Finance Corp. v. Bankers Trust Co., 318 U.S. 163, 63 S.Ct. 515, 87 L.Ed. 680 (1943).

Other issues raised by the parties need not be discussed.[6]

The judgment will be affirmed.

---

6. Appellant's brief at pps. 18–20 makes the complaint that "[t]he provision of the order [of dismissal] permitting plaintiff [appellant] to seek the same relief in the bankruptcy proceeding became moot by the entry of a subsequent order in the debtor proceeding." We fail to see how this could possibly be relevant here. All that we have decided is that an ICC order under Section 77(p) of the Bankruptcy Act is not reviewable by a three-judge court. It appears that the appellant does not believe that it has been afforded an adequate opportunity to petition the reorganization court for review of the ICC's Section 77(p) order, but if the appellant wishes to pursue this complaint it must be done in another appeal. The notice of appeal in the instant case does not appeal any order of the *reorganization* court.

Although we need not and do not purport to adjudicate the matter here, we do not believe that the question of judicial review of the ICC's Section 77(p) order is moot. As far as we can perceive from the record, the appellant has never formally requested the reorganization court to review the Section 77(p) order. We fail to see how the reorganization court's refusal to allow the appellant to intervene in the reorganization proceedings (see note 1, *supra*) forecloses the possibility of that court's review of the ICC's representation order under Section 77(p).