### In the Matter of the CENTRAL RAILROAD COMPANY OF NEW JERSEY, Debtor.

### Appeal of COMMONWEALTH OF PENNSYLVANIA and Pennsylvania Public Utility Commission.

### No. 73-1110.

United States Court of Appeals, Third Circuit.

Argued July 20, 1973.

Reargued Sept. 12, 1973.

Decided Sept. 20, 1973.

As Amended Nov. 2, 1973.

Israel Packel, Atty. Gen., Harrisburg, Pa., Dante Mattioni, Deputy Atty. Gen., Philadelphia, Pa., Gordon P. MacDougall, Sp. Asst. Atty. Gen., Washington, D. C., Philip P. Kalodner, Counsel, Edward Munce, Alfred N. Lowenstein,

Asst. Counsels, Pennsylvania Public Utility Commission, Harrisburg, Pa., for appellants.

Harlington Wood, Jr., Asst. Atty. Gen., Washington, D. C., Herbert J. Stern, U. S. Atty., Newark, N. J., Morton Hollander, Irwin Goldbloom and James F. Dausch, Attys., Dept. of Justice, Washington, D. C., for United States, appellee.

Stanley Weiss, Carpenter, Bennett & Morrissey, Newark, N. J., for trustee.

Roger C. Ward, Pitney, Hardin & Kipp, Newark, N. J., for Manufacturers Hanover Trust Co.

Charles Danzig, Riker, Danzig, Scherer & Brown, Newark, N. J., for Lehigh Coal & Navigation Co.

John P. Sheridan, Jr., Trenton, N. J., for State of N. J.

Argued July 20, 1973.

Before VAN DUSEN and WEIS, Circuit Judges.

Reargued Sept. 12, 1973.

Before VAN DUSEN, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

This appeal challenges the right of a Section 77 reorganization court to deny the Commonwealth of Pennsylvania and its Public Utility Commission leave to file an action in the United States District Court for the Middle District of Pennsylvania to review orders of the Interstate Commerce Commission, concerning tariff routings and authorizing the abandonment by the reorganization trustee of certain lines in Pennsylvania and western New Jersey.[1]

After the debtor had lost more than 100 million dollars from 1958–1971, the trustee presented in 1971 a "blueprint for survival" to deal with a severe liquidity crisis which threatened termination of all its operations. An important part of this "blueprint" involved abandonment of the debtor's unprofitable operations in Pennsylvania [2] and reduction of the debtor's operations to six heavily populated and industrialized north-central New Jersey counties. On May 7, 1971, and thereafter the trustee, pursuant to section 77(o) of the Bankruptcy Act (11 U.S.C. § 205(o)), sought the approval of the reorganization court for abandonment of various portions of lines operated by the debtor, including those in Pennsylvania, and these applications eventually resulted in Orders Nos. 410, 451, and 514 approving abandonments. As a result of the May 7, 1971, and subsequent applications, the reorganization court authorized the trustee to file requests for authorizations with the Commission for such abandonments, which requests were granted on August 20, 1971, and May 26, 1972. On December 20, 1971, the reorganization court issued Order 445, directing the trustee to suspend all CNJ operations in Pennsylvania by April 1, 1972, pending the Commission's final decision on the abandonment application, and enjoining all parties from instituting or maintaining in any other court any action affecting CNJ operations in Pennsylvania, or the abandonment thereof, without the permission of the reorganization court. This court affirmed Order 445, In the Matter of Central Railroad Company of New Jersey, Debtor, 455 F.2d 989 (3d Cir. 1972). On May 26, 1972, the ICC granted the debtor permission to abandon all its lines in Pennsylvania, subject to cer-

---

1. Order No. 550 dated December 20, 1972 (D.N.J. Bankruptcy No. 401–67), contained this language, *inter alia*:

   "It is, . . . Ordered that the petition for leave to file an action against the United States of America in the United States District Court for the Middle District of Pennsylvania to judicially review certain orders of the Interstate Commerce Commission in Finance Docket No. 26659 and in Investigation and Suspension Docket No. 8667 is denied; . . . . "

2. These operations were to be conducted by the Lehigh Valley Railroad, which operated parallel lines in Pennsylvania at that time.

tain conditions. Central Railroad Company of New Jersey-Abandonment, 342 I.C.C. 277 (1972).[3] After hearing, the reorganization court, by order No. 514 dated July 5, 1972, authorized (a) compliance by the trustee with such conditions, and (b) the abandonments of the Pennsylvania lines.[4] No appeal was taken from such order.[5] However, by motion returnable December 11, 1972, appellants sought leave to file the action described in the first sentence of this opinion.

We have concluded that the above-quoted language of order No. 550 (note 1) should be affirmed. On the facts presented by this record, including the failure of appellant to appeal from order No. 514 and the affirmance of order No. 445 by this court (455 F.2d 989, *supra*) resulting in the abandonment of the Pennsylvania lines, the reorganization court had the authority to protect its jurisdiction by precluding review of the abandonment of the Pennsylvania lines in any other district court. See 28 U.S.C. §§ 1336(b) and 1398(b);[6] New

---

3. The Commission used this language in its "Conclusions" at 288 and 290–291:

   "The overriding factor with which we are faced, is that since 1967, CNJ has been debtor in reorganization under the Bankruptcy Act before the United States District Court for the District of New Jersey. Its position has continuously deteriorated, as have other railroads serving the New York metropolitan area. CNJ now may be considered *in extremis*. During and since 1970, its losses have amounted to more than $1 million per month. Under the circumstances, some form of drastic remedial action became imperative. The subject application to abandon, and its various parts, represents CNJ's election, approved by the Reorganization, to seek to terminate all operations in Pennsylvania, and to reduce and restructure its lines and operations in New Jersey. The application is properly filed under section 1(18)–(20).

   .   .   .   .   .

   "[T]he record as it stands does support our concluding that the fully distributed net income deficits in Pennsylvania have been sizeable each year, even prior to payment of the annual lease rental to LC&N for operation over the lines of L&S . . . Also, the record establishes, and we find, that the State of New Jersey for some years has provided various forms of railroad passenger and freight service subsidies and other financial aid to CNJ. Obviously, it sought to assure the capability of CNJ to continue in business as a railroad in New Jersey. On the other hand, the Commonwealth of Pennsylvania has not referred to any present or prospective program of assistance to railroads in which CNJ has been or would be able to participate as a recipient."

   Its "ultimate findings" at page 304 included this paragraph:

   "Subject to the imposition of traffic protective conditions and employee protective conditions set forth in detail in the 'Conclusions' sections of this report, we find in Finance Docket No. 26659 and Finance

   Docket No. 26659 (Sub-Nos. 1, 2, 3, 5, 9, 10, 11, 12, 14, 15, 21, and 28), that the present and future public convenience and necessity permit abandonment and abandonment of operation by Central Railroad Company of New Jersey and by certain subsidiary companies, all designated hereinbefore and individually identified in title pages of the certificate and order herein, and in greater detail in *appendix A*, attached to the report."

4. It is noted that on timely application to the reorganization court at this hearing, it could have convened a three-judge court under 28 U.S.C. §§ 2321–25. *Cf.* Bondholders Protective Committee v. ICC, 432 F.2d 268, 270–271 (3d Cir. 1970).

5. Because of the basis for the affirmance of the relevant part of Order No. 550 stated below, it is not necessary to determine whether the failure to appeal from such order and the decisions of this court on March 10, 1972 (see Matter of the Central Railroad Company of New Jersey, Debtor, *supra*, and related cases reported at 455 F.2d 988, 989 and 990) require affirmance of such part of Order No. 550 under the principle of law of the case and res judicata. See Antonioli v. Lehigh Coal and Navigation Co., 451 F.2d 1171 (3d Cir. 1971) ; 1B Moore's Federal Practice, § 0.404(1), pp. 402–03 (2d ed.).

6. Although the parties have not furnished a copy of order No. 410 to this court in the appendices in this appeal, paragraphs 9 and 10 of the Petition of LC&N (Docket 2018 in district court) recite at 24a–1 and 25a of the trustee's appendix, *inter alia*:

   "9. On May 25, 1971, by order No. 410, this Court authorized the Trustee to file applications with the Interstate Commerce Commission for permission to abandon certain lines then operated by said Trustee, which lines included the L&S system located in Pennsylvania. By said order No. 410, this Court reserved jurisdiction of the subject matter and directed said Trustee to apply further to this Court for authority to abandon any lines or operations that

Haven Inclusion Cases, 399 U.S. 392, 420–422, 90 S.Ct. 2054, 26 L.Ed.2d 691 (1970); In re Penn Central Transportation Company, 446 F.2d 1109, 1111–1112 (3d Cir. 1971); Bondholders Protective Committee, *supra*, 432 F.2d at 270–271; In re Huntingdon & Broad Top Mt. R. R. & Coal Co., 213 F.2d 411, 416–417 (3d Cir. 1954), where Judge Biggs made the pertinent observation at 417, "It is time that this chapter in the history of [the railroad] was brought to a close."

That part of order No. 550 quoted in note 1 of this opinion will be affirmed.

may be authorized to be abandoned by the Interstate Commerce Commission.

"10. On May 26, 1971, the Trustee filed with the Interstate Commerce Commission, pursuant to order No. 410, a petition for abandonment of the aforesaid lines . . . ."

The wording and legislative history of 28 U.S.C. §§ 1336(b) and 1398(b), as well as of § 77(*o*) of the Bankruptcy Act (11 U.S.C. § 205(*o*)), show that Congress intended appeals of abandonment orders in railroad reorganization cases to be reviewed in the context of the reorganization proceeding and not in a court of coordinate jurisdiction. See Leonard Bros. Trucking Co. v. United States, 301 F. Supp. 893, 898 (S.D.Fla.1969); House Report 1015, 88th Cong., 2d Sess., to accompany H.R. 7508; see also ICC v. Atlantic Coast Line R. Co., 383 U.S. 576, 579–580, 86 S.Ct. 1000, 16 L.Ed.2d 109 (1966); Keller Industries, Inc. v. United States, 449 F.2d 163, 166–167 (5th Cir. 1971); Louisville and Nashville R. Co. v. Knox Homes Corp., 343 F.2d 887, 897 n. 38 (5th Cir. 1965). When § 77(*o*) was originally added to the Railroad Reorganization Act in 1935, preliminary drafts of the bill (H.R. 6249, later H.R. 8587, 74th Cong., 1st Sess.) containing that section provided, *inter alia*:

"The conclusion of the judge that any property authorized to be abandoned or sold hereunder, *unless set aside by a court of competent jurisdiction*, shall raise a conclusive presumption that such abandonment or sale was justified and that such trustees were not justified in opposing same." [Emphasis supplied.]

The above-quoted language was omitted from the bill adopting § 77(*o*) as finally passed. See House Report 1283, 74th Cong., 1st Sess.