## COMSTOCK v. THOMPSON.
### No. 13170.

Circuit Court of Appeals, Eighth Circuit.

Dec. 5, 1946.

152

William H. Biggs, of St. Louis, Mo. (Biggs, Curtis & Crossen, of St. Louis, Mo., on the brief), for appellant.

Russell L. Dearmont, of St. Louis, Mo. (Thomas T. Railey, of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, SANBORN and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order directing the trustee of the Missouri Pacific Railroad Company in reorganization to pay from available funds of the debtor estate the sum of $24,668,392, in payment of the balance due on principal and interest of all bonds then outstanding and unpaid issued under the St. Louis, Iron Mountain and Southern Railway Company, River and Gulf Divisions, First Mortgage. Appellant, Andrew W. Comstock, is the holder of $80,000 face value of Missouri Pacific Railroad Company bonds, being a small block compared with the total bond issue of which they are a part, which were purchased by him at 10 per cent of their face value. They are not secured by a lien on any of the physical properties or cash of the company but this bond issue is secured only by the pledge of 121,460 shares of the capital stock of the New Orleans, Texas and Mexico Railway Company, a subsidiary of the Missouri Pacific Railroad Company. Pursuant to this order and on due notice, appellee has paid and retired all of said St. Louis, Iron Mountain and Southern Railway Company bonds and has fully executed the order appealed from, the appellant not having given a supersedeas bond on this appeal.

The only point relied upon for reversal of the order by appellant is that the court erred in entering the order to pay the outstanding bonds because the evidence did not establish that the property covered by the lien of the mortgage had net earnings during the period of the reorganization proceedings of the Railroad Company sufficient to pay the principal and interest.

It appears from the court's findings that these bonds matured May 1, 1933, and were not paid at maturity, but pursuant to order of the Administrative Judge 30 per cent of the principal amount of the bonds was paid November 1, 1943; that the line of railroad subject to the mortgage securing these bonds is one of the major portions of the debtor's main line of railroad and is a necessary and integral part of the railroad; that the Interstate Commerce Commission

found that the entire claim of said mortgage should be satisfied in cash, 10 year collateral trust notes and first mortgage bonds; that the available funds of the debtor estate were amply sufficient to meet the cash requirements of the proposed plan of reorganization and in addition to retire on November 1, 1945, in full these bonds now outstanding in the principal sum of $24,-183,600, together with interest which shall have accrued at said date. The court further found, "That the retirement of said bonds may be made within the framework of the Plan of Reorganization and under the provisions thereof, and that the retirement of same will be to the best interest of said trust estate and in the public interest."

The mortgage securing these bonds was a first lien on 770.90 miles of railroad. The road is referred to in the record as a very valuable water level, heavy traffic density, double-track route up the east side of the Missisippi River from Thebes to Dupo. The mortgage contained the usual provision that in the event of default the bondholders had a lien upon all the rents, issues, profits, tolls, and other income derived from the operation of said line of railroad. Prior to September 1, 1937, the earnings from the property described in the mortgage securing these bonds were segregated for record purposes, but because of the heavy expense of maintaining such records the practice was discontinued. At the hearing testimony was received to the effect that in the opinion of the debtor's trustee and his chief accounting officer the earnings from this part of the debtor's railroad were sufficient to pay both the principal and interest on the bonds.

Operation of the Missouri Pacific System during the war resulted in substantial surpluses, on a part of which the holders of the bonds now in question had a lien and on a part of which the holders of another issue of bonds known in the record as the First Refunding Bonds had a lien. The trustee and the Administrative Judge were confronted with the question of how to dispose of this commingled surplus to the best advantage of the trust estate without undue risk or preferences. After due considera-

tion, the Administrative Judge, conversant with the financial status and operating conditions of the debtor, and likewise familiar with all the liens and claims against the debtor, concluded that the best interest of the estate and of the public would be served by paying off this well-secured underlying mortgage securing past due bonds which were subject to call. The interest on the bonds had been paid currently out of earnings and a 30 per cent installment had been paid without objection on the part of appellant or any other claimant. There is no suggestion that these bonds were not fully secured, as the court found.

As further indicating the strong position held by the owners of these bonds in the debtor's financial structure, reference may be made to other bonds. The First and Refunding Mortgage before mentioned securing $264,040,500 principal amount of bonds, is a lien on substantially all of the Missouri Pacific property, subject, however, to certain underlying divisional mortgages. These bonds have not yet matured but some of the interest is in default and under the provisions of the mortgage in the event of default the bondholders have a lien on all such rents, issues, profits, tolls and other income derived from the operation of the property on which it has a first lien. Surplus earnings on which this First and Refunding Mortgage constitutes a lien have from time to time been applied to retire or to assist in retiring various underlying mortgages and as these underlying mortgages are retired the First and Refunding Mortgage automatically becomes a first lien with respect to the segment of the railroad freed from the lien of these underlying mortgages. In this manner five underlying mortgages covering the St. Louis terminals and the main line between St. Louis and Kansas City have been retired, and this procedure has been followed as a practical method of retiring debt in a manner to improve the lien of the First and Refunding Mortgage.

As has been observed the court found that the retirement of the St. Louis, Iron Mountain and Southern Railway Com-

pany, River and Gulf Divisions Mortgage "will be to the best interest of said trust estate and in the public interest." As this finding is not challenged we must accept it as true. But appellant contends that notwithstanding this finding the order was erroneous as a matter of law. Before considering this question we think it important to consider whether the standing of the appellant is such as to entitle him to complain of the court's order. It must appear that he has a personal interest in the subject matter of the litigation and it must also appear that he is aggrieved or prejudiced by the order entered. His interest must be immediate and pecuniary, and not a speculative, contingent or future interest. We are impressed with the thought that appellant's interest here is surely contingent, speculative and remote. But if it may be conceded that he has sufficient interest in the subject matter of litigation to entitle him to be heard on appeal, it is still incumbent upon him to show that he is aggrieved or prejudiced by the order as review proceedings are not for the purpose of settling abstract questions but only to correct errors injuriously affecting the appellant. The record should affirmatively show that appellant was aggrieved by the order as this court cannot hear evidence to determine that question. Here the order appealed from has been fully carried out and on oral argument counsel for appellant admitted that a reversal could be of no possible benefit to his client. In view of appellant's status as a creditor it would seem that whatever is in the best interest of the estate could not be prejudicial to him.

■ The finding of the Administrative Judge is to the effect that the line of railroad described in and subject to the mortgage securing these bonds is one of the major portions of the Missouri Pacific's main line of railroad and that it is a necessary and integral part of that railroad. Its value was not only more than sufficient to secure the bonds but that segment of the railroad was of commanding importance to the company's entire system. The physical property pledged was in itself worth vastly more than the outstanding bonds and the proof warranted the conclusion implied in the findings of the trial court that the earnings derived from this portion of the railroad during bankruptcy were sufficient to pay both principal and interest on these bonds. But even if that were not true, the order should not be disturbed in view of the court's findings and the undisputed facts. Appellant cites no authorities to sustain his contention and we have found none.

■ In a conventional bankruptcy proceeding the trustee may be permitted to use general creditors' cash to retire a mortgage lien and thus protect the equity of redemption, and we think like authority is vested in the trustee in a railroad organization proceeding under Section 77 of the Act, 11 U.S.C.A. § 205. All provisions of the Bankruptcy Act, except such as are inconsistent with the statute governing corporate reorganization, are applicable to proceedings for reorganization whether an order to liquidate the estate has been entered or not. Bankruptcy Act, Section 77B, sub. k, 11 U.S.C.A. § 207, sub. k; Smith, Trustee etc. v. Hoboken Railroad etc. Co., 66 S.Ct. 947. The Act contains specific provision that the jurisdiction and powers of the court, the duties of the debtor, and the rights and duties of creditors, and of all persons with respect to the debtor and his property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition or answer was approved. Sec. 77B, sub. o, 11 U.S.C.A. § 207, sub. o. The right of the trustee to redeem property and the power of the bankruptcy court to authorize such redemption is implied from the general provisions of the statute. Section 77, sub. l, Title 11 U.S.C.A. § 205. In addition to this it should be observed that Section 77, sub. c(2) provides as follows: "The trustee or trustees so appointed, upon filing such bond, shall have all the title and shall exercise, subject to the control of the judge and consistently with the provisions of this section, all of the powers of a trustee appointed pursuant to section [44] or of any other section of this act, and, to the extent

not inconsistent with this section, if authorized by the judge, the powers of a receiver in an equity proceeding."

In an ordinary bankruptcy proceeding the trustee may without doubt retire mortgages and protect the equity of redemption, and we are clear that the same power is vested in the trustee in a reorganization proceeding. We think the record fully warrants the entry of the order appealed from and it is accordingly affirmed.