**In re HUNTINGDON & BROAD TOP MOUNTAIN R. R. & COAL CO. et al.**

No. 11275.

United States Court of Appeals, Third Circuit.

Argued March 18, 1954.
Decided May 28, 1954.

**412**

Albert D. Brandon, Pittsburgh, Pa. (Oliver, Brandon & Shearer, on the brief), for appellants.

R. Lester Moore, Philadelphia, Pa., as amicus curiae.

Gilbert W. Oswald, Philadelphia, Pa., for Bondholders' Protective Committee.

J. Wesley McWilliams, Philadelphia, Pa., for appellee.

Before BIGGS, Chief Judge, and MARIS and STALEY, Circuit Judges.

BIGGS, Chief Judge.

Proceedings for the reorganization of The Huntingdon and Broad Top Mountain Railroad and Coal Company were instituted in the court below in April 1949 pursuant to Section 77 of the Bankruptcy Act, as amended, Section 205, Title 11, U.S.C.A. The railroad had been in great financial difficulties for many years prior to the Section 77 proceeding. No interest has been paid since 1931 on the Railroad's Consolidated Mortgage Bonds, secured by a first lien on all of its properties, and the amount of unpaid interest on the bonds now exceeds their face value. In approximately five years of operation by the original Trustee and his successor the Railroad has been operated at a continuous loss which now totals more than $250,000.

Acting against this background the Successor Trustee procured a certificate from the Interstate Commerce Commission authorizing disposition of the Railroad and with the approval of a committee formed for the protection of the bondholders, on January 15, 1954 entered into an agreement with Hyman-Michaels Company, which provided that Hyman-Michaels should act as an agent of the Trustee to dispose of the Railroad's property, excepting therefrom certain portions of its trackage. Section 77(*o*) of the Bankruptcy Act, as amended, 11 U.S.C.A. § 205(*o*). Hyman-Michaels also gave a guarantee that the amount received by the Trustee from the disposition and liquidation should be not less than $345,000.[1] It is

---

1. A group known as the Everett Railroad Company has agreed to buy 3.75 miles of the trackage of the Railroad between Mt. Dallas and Tatesville, at the southern end of the line, for approximately $32,000. In addition, 5.27 miles of line running north from Tatesville to Cypher was sold to Clair P. Burtner. There was also a sale of 0.57 miles sold by the Trustee to residents of Huntingdon. The 0.57 miles were at the north end of the line between Long Siding and Huntingdon. Approxi-

noted that Hyman-Michaels is the owner of 52% of the outstanding mortgage bonds.

The Trustee and the Bondholders' Protective Committee recommended to the court below that the agreement between the Trustee and Hyman-Michaels be approved. Accordingly, on January 26, 1954, the court entered an order stating that (1) the contract "will be approved and confirmed and the Successor Trustee authorized and directed, to proceed in accordance therewith unless exceptions * * * be filed on or before February 5th, 1954 * * *" and (2) all claims "presently accrued against the Successor Trustee or the original Trustee * * * shall be filed with the Clerk * * *" within 30 days and (3) that notice of this requirement should be mailed "to the railroad brotherhoods or their counsel."

The appellants filed exceptions to the proposals embodied in the agreement between the Trustee and Hyman-Michaels. In substance these exceptions complained that the work to be performed by Hyman-Michaels under the agreement in removing rails, bridges and crossings might be so negligently conducted by it that damage suits might result therefrom tending to reduce the amount available to pay the appellants' claims, that suits might be instituted against the Trustee by shippers for breaches of shipping agreements, and that the interests of the estate would be better served by not abandoning the Railroad or not liquidating its properties or by procuring bids for the Railroad as a whole or pursuing some other course.

The appellants also filed claims for back pay, severance pay and for vacation allowances allegedly accruing since the inception of the Section 77 proceedings. These claims amount to $27,500. An examination of the claims file shows that the total gross amount of em-

ployees' claims, including those of the members of the Brotherhood, the appellants, accruing since the inception of the Section 77 proceedings, is approximately $242,000. We are not presently required to pass upon the validity of these claims. It is appropriate to point out, however, that by the provisions of Section 77(n) such claims must be preferred and paid as operating expenses.

After consideration of the exceptions, the court below on February 9, 1954 entered an order dated February 5, 1954 approving the agreement between Hyman-Michaels and the Trustee and dismissing the appellants' exceptions. This is the order appealed from. On March 1, 1954 the Trustee and the Bondholders' Protective Committee filed a motion to dismiss the appeal. We held the motion in abeyance pending argument upon the merits on March 18, 1954.

The motion to dismiss is based on two grounds. First, the Trustee and the Bondholders' Protective Committee assert that it is obvious that ample funds will come into the hands of the Trustee under the Hyman-Michaels contract to permit payment in full of appellants' claims, if they are valid, and by inference, all other claims of a like category, and therefore the appellants possess no cognizable legal interest in the order of February 9, 1954 and hence no standing to maintain the appeal. On examination the exceptions filed by the appellants in the court below seem to have but little weight, as we shall point out in more detail hereinafter; we may surmise that the appellants are fighting a delaying action in the hope, not of protecting valid existing claims which they may assert, but of somehow retaining positions with the Railroad, on which their livelihood depends. We view the appellants' predicament with sympathy but this favorable consideration cannot confer standing to appeal on the appel-

---

mately 35 miles of the main line were to be, and, we understand, have been abandoned. The proceeds of the sale to the Everett Railroad Company were not in-

cluded in the $345,000. Whether or not the proceeds of the other two sales of trackage were included in the $345,000 does not clearly appear from the record.

lants. But Section 77(*o*) provides that an order made pursuant to its provisions "* * * shall be a final order for the purposes of appeal", and the appellants as exceptants were brought upon the record by the terms of the order of January 26, 1954. They claim that substantial amounts are due to them and at this stage of the proceedings their claims must be treated as valid. The exceptions taken by them to the disposition of the railroad through Hyman-Michaels were dismissed by the very order from which they now appeal. In support of their own position the Trustee and the Bondholders' Protective Committee cite In re Western Pac. R. Co., 9 Cir., 1941, 122 F.2d 807, and Missouri Pac. R. Co. v. Thompson, 8 Cir., 1943, 134 F.2d 139, but we deem these authorities to be inapposite for in neither case was there a final order nor was any disposition being made of any property or money of the debtor.[2] In the instant case all of the property of the debtor will be disposed of by the order of February 9, 1954 in conjunction with that of January 26, 1954. To say that individuals who are exceptants pursuant to express authorization of the court as well as claimants of record may not object to a binding contract whereby all of the assets of the debtor corporation will be disposed of eventually, seems to us to offend a basic principle of the Bankruptcy Act; viz., the principle that the trustee or a claimant acting *vice* the trustee, has the right to be heard in respect to a definitive order. A trustee in bankruptcy may appeal as a matter of right from any order confirming a sale of the property of the bankrupt; *a fortiori* he may appeal from any order which will dispose of *all* of the property of the bankrupt. The status of the appellants to appeal *vice* the trustee is discussed under the next point in this opinion. Suffice it to say here that, insofar as the present issue is concerned, we hold that the appellants possess the necessary cognizable legal interest to maintain the appeal and that the first ground asserted in support of the motion to dismiss cannot be sustained.

■ The second ground to be considered as a ground for the dismissal of the appeal is that the appellants have failed to obtain leave of the court below to take their appeal to this court. The fact that the order of February 9, 1954, read in conjunction with the order of January 26, 1954, purportedly made pursuant to Section 77(*o*), must be treated as a final order for the purposes of appeal has no bearing upon this precise issue. The question of a creditor's right to appeal an order in respect to another creditor's claim to this court without authority from the trial court was before us in Reuping Leather Co. v. Fort Greene Nat. Bank, 3 Cir., 1939, 102 F.2d 372, and In re Michael J. Hughes & Co., 3 Cir., 1953, 207 F.2d 295. The General Orders in Bankruptcy throw but little light upon the subject. But it is the law that when an order has been made in the course of the proceeding by the bankruptcy court affecting the disposition of property the individual creditor ordinarily does not possess the standing to appeal unless he be granted leave or authority to appeal and does so in the name of the trustee. The decision in Amick v. Mortgage Security Corporation, 8 Cir., 1929, 30 F.2d 359,[3] citing Chatfield v. O'Dwyer, 8 Cir., 1900, 101 F. 797, remains perhaps the leading authority on this subject.

2. In the third case cited by the Trustee and the Bondholders' Protective Committee, Comstock v. Thompson, 8 Cir., 1946, 158 F.2d 151, the questions presented were considered by the court on the merits. The appeal was not dismissed.

3. In the Amick case the creditors sought to appeal from an order of a referee directing money which came into the hands of the trustee from the operation of a hotel to be paid to mortgagees and since leave to appeal was not granted, the appeal was dismissed. The decree appealed from in the Amick case was not entirely dissimilar to the order appealed from in the case at bar but the Amick order was not a "final order" either in fact or in law or by statutory description.

Though the principle involved is one of orderly administration of an estate, it must not be applied too strictly lest injustice result. In almost every instance it has been applied only in respect to creditors, most frequently to general creditors. The principle has been held to be inapplicable, for example, to creditors holding security, whose position ordinarily is adverse to that of the trustee. See In re Braker, 6 Cir., 1942, 127 F.2d 652, 653–654.[4] In the instant case the appellants are claimants whose claims are alleged to be part of the expenses of administration. The claimants are not creditors in the ordinary sense of the word. Moreover, it is clear that the position of the Trustee is adverse to that taken by these claimants. The Trustee has indicated that he intends to contest their validity and—we were informed in open court and it is not denied—is preparing objections to them. Under the circumstances the principle of trustee representation may not be applied.

In our opinion the motion to dismiss the appeal is not well grounded and must be denied.

This brings us to the merit of the appeal. As we have indicated the appellants filed a number of exceptions, eighteen in all, which were dismissed by the order of the court below filed February 9, 1954. They are somewhat vague and go primarily to the proposition that the assets of the railroad should not be disposed of by the Trustee in the manner required by the contract made by the Trustee and Hyman-Michaels and approved by the court below even though portions of the Railroad's line were to be maintained in operation. See note 1, supra. The gravamen of the exceptions seem to indicate that the appellants are in fear that the best price obtainable for the railroad's assets will not be procured by the course approved by the court. Possible bidders are mentioned. A certain bidder appearing *amicus curiae* asserts that he will pay more for the Railroad as a whole than Hyman-Michaels' guarantees even if the sale to Everett Railroad Association be taken into consideration.

The appellants misunderstand the functions of Hyman-Michaels under the contract. The Trustee is *not* selling the remaining property[5] to Hyman-Michaels. Under the contract Hyman-Michaels is constituted the Trustee's agent for sale. All sales made by the agent must be approved by the Trustee. No sale to Hyman-Michaels is contemplated. Under the contract Hyman-Michaels is required to perform certain acts of dismantlement and abandonment as authorized by the Interstate Commerce Commission and, it may be assumed, the Pennsylvania Utilities Commission.[6] The dismantlement of the Railroad is to be carried out by Hyman-Michaels at "the actual direct cost" of the field work and services described in the contract, plus a commission of 5% of the gross sale proceeds or $20,000, "whichever shall be less". The appellants insist that this work may be so negligently performed by Hyman-Michaels as to obliterate the estate or to reduce its value by large damage claims. But this fear is unrealistic for the work is to be done subject to the control of the Trustee and of the Court. Nor can we perceive that

---

4. Judge Florence Allen said: "[The motion to dismiss is] based upon the proposition that the trustee represents the creditors, and therefore is the proper party to appeal. While it is conceivable that the trustee at times might be united in interest with secured creditors, in the instant case the trustee is plainly adverse to the interest of appellant, which is a secured creditor. Hence the reason for the rule obtaining as to general creditors does not here exist.", citing In re Roche, 5 Cir., 1900, 101 F. 956, 958.

5. When we speak of the "remaining property" of the Railroad we mean, of course, the property remaining after the sale to Everett Railroad Company referred to in note 1 of this opinion.

6. As to the acts required by the Public Utilities Commission of the Trustee see paragraph 1 of the agreement of January 15, 1954 between the Trustee and Hyman-Michaels.

the expressed fear of the appellants that the Trustee may incur substantial damages for breach of shipping contracts is any more substantial for the Interstate Commerce Commission, as we have said, on December 9, 1953, authorized abandonment, as has the court below by its orders of January 26 and February 9, 1954.

The outstanding fact—and it is indeed lamentably apparent—is that the Trustee has possession of a rapidly dying railroad. Its failing condition has been notorious for years. No one has suggested any valid means of revivification or resurrection. Coal, the life blood of Broadtop, has lost a large part of its use in commerce. The final blow rendering abandonment of the Railroad necessary was the decision of the Pennsylvania Electric Company to stop using coal.

As indicated, the appellants fear that the estate may become so impoverished by the disposition or liquidation of the remaining assets of the Railroad that their claims may not be paid. We cannot see that this is liable to happen. But even if the appellants' fear was well founded we would conclude nonetheless that the disposition or liquidation of the Railroad's remaining assets would have to be proceeded with promptly. The plan proposed by the Trustee and approved by the court to this end seems reasonably adapted to procure the best values for the assets of the dying Railroad.

We have concluded that the appellants have sufficient interest in the subject matter to be heard on appeal but if the order complained of is to be reversed it is still incumbent upon them to show that they are aggrieved or prejudiced by the order. Review proceedings are not for the purpose of settling abstract questions but only to correct errors injuriously affecting an appellant. Here, the appellants are in fact complaining of a failing economic situation which no man can substantially alter. See Comstock v. Thompson, 8 Cir., 1946, 158 F.2d 151, 154. We are of the opinion

that the liquidation and abandonment procedures proposed by the Trustee and approved by the court below are well designed to secure for the debtor railroad the best dollar values obtainable.

So much for the exceptions filed by the appellants in the court below and argued here. Certain other issues remain, however, which are primarily jurisdictional in nature and which have been raised by this court *sua sponte*. See Mitchell v. Maurer, 1934, 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338. At the direction of the court these issues have been briefed by counsel for the Trustee, for the Bondholders' Protective Committee and by counsel appearing for the bidder, hereinbefore referred to, leave having been granted to the latter to appear *amicus curiae*. A supplemental affidavit has also been filed in this court. The allegations contained therein have not been denied, and indeed most of what is alleged is to be garnered from the record in the case in the court below.

We are of the opinion that the court below had the jurisdiction, i. e. the power, to make the order complained of pursuant to the provisions of Section 77(*o*) of the Bankruptcy Act and those of the certificate granted by the Interstate Commerce Commission. It is true that the provisions of Section 77(*o*) look primarily, not to disposition of the assets of a railroad or to its total abandonment, but to its "ultimate reorganization". As we read the record a total of about 9½ miles of Broadtop's trackage will be left in operation usefully serving communities adjacent to the line. If the instant proceeding were brought to an end it would be necessary to turn the property back to the debtor, if this were possible, and let the trustees for the bondholders proceed under their mortgage by way of foreclosure. This might well result in a loss of all operating trackage to communities which vitally require its use for sound economic reasons. It is true that the greater portion of the Railroad's trackage will be abandoned and junked under

the Hyman-Michaels proposal and that the parts kept in operation are a comparatively small fraction of the whole.[7] But the Trustee has effected the continued operation of a substantial part of the Railroad's trackage. These portions will fulfill the purposes for which they are intended, however modest the operations may be. Both the provisions and objectives of Section 77(o) have been or will be fulfilled.

If any doubt were left we would conclude that the court below and the Trustee had the right to proceed, as they have proceeded, pursuant to the provisions of Section 77(a), which state, *inter alia*, that the court "* * shall have and may exercise in addition to the powers conferred by this section all the powers, not inconsistent with this section, which a Federal court would have had if it had appointed a receiver in equity of the property of the debtor for any purpose."

How far from reality are the attacks upon the proceedings in the court below appears from the reply brief of the amicus curiae which states candidly (and, we believe, correctly) that the Trustee's agent, Hyman-Michaels Co., has practically completed the tearing up of the trackage of Broadtop save those portions sold for railroad purposes and set out in substance in note 1, supra. What the appellants and the amicus curiae seek to have this court and the court below accomplish is to undo what has been done and in some way reassemble Broadtop not only as a railroad but also to make of it a going concern. The results sought are impossible of achievement.[8]

The supplemental affidavit indicates that the Pennsylvania Public Utilities Commission has now issued a proper certificate to the Trustee pursuant to Section 202 of the Act of May 28, 1937, P.L. 1053, as amended, 66 P.S.Pa. §

1122(d) and that this is a fact is not denied. All provisions of the Bankruptcy Act in our opinion have been complied with. All notice required by the statute has been given. It is time that this chapter in the history of Broadtop was brought to a close.

Accordingly, the judgment appealed from will be affirmed. As indicated, the motion to dismiss will be denied.

---

7.  About 20%.

8.  The situation is somewhat comparable and analogous to that which faced the court in In re Pittsburg, S. & N. R. Co., D.C.W.D.Pa.1947, 75 F.Supp. 292, in re-

spect to the Pittsburg, Shawmut & Northern Railroad Company, a railroad subjected to substantially similar economic pressures which have affected Broadtop.