273 F.2d 506
 Matter of CENTRAL METALLIC CASKET CO., Inc., Bankrupt.
ATLAS PLYWOOD CORPORATION and Thirty-Nine (39) Other
Creditors, Appellants,
v.
CENTRAL METALLIC CASKET CO., Inc., Bankrupt; International
Rolling Mills, a Creditor; Elizabeth Forke, a
Creditor; State of Wisconsin Industrial
Commission, a Creditor, Appellees.
 No. 12619.
 United States Court of Appeals Seventh Circuit.
 Jan 12, 1960.
 
 Jacob N. Gross, Chicago, Ill., Brussell & Gross, Chicago, Ill., for appellants.
 W. H. Putnam, Madison, Wis., for Industrial Commission of Wis.
 Walter F. Boye, Chicago, Ill., for E. Forke.
 Thomas G. Godfrey, Godfrey, Godfrey & Neshek, Elkhorn, Wis., for Central Metallic Casket Co., Inc.
 Irving A. Gordon, Chicago, Ill., John J. Ottusch, Wickham, Borgelt, Skogstad & Powell, Harry F. Franke, Milwaukee, Wis., for International Rolling Mills.
 Before DUFFY and KNOCH, Circuit Judges, and MERCER, District Judge.
 DUFFY, Circuit Judge.
 
 
 1
 This is an appeal from an order of the District Court confirming and sustaining an order of a Referee in Bankruptcy. United American Metal Corporation and Atlas Plywood Corporation and thirty-mine other creditors filed a petition with the Referee requesting that all funds, choses in action and other property in the possession and control of the Trustee herein be distributed pro rata to petitioners and the members of the class they represent, free and clear of all encumbrances, and subject only to the costs of administration and other costs herein.
 
 
 2
 The Referee entered Findings of Fact and Conclusions of Law and an order denying the petition. The District Court sustained the Findings of Fact and Conclusions of Law, and approved the decision of the Referee.
 
 
 3
 Central Metallic Casket Company, an Illinois corporation, was organized about 1919. It conducted a business of manufacturing metallic caskets in Chicago, Illinois, from the date of its organization until May 20, 1955. In 1954, the corporation sold its factory building in Chicago and agreed to deliver and thereafter, did deliver possession thereof to the purchaser on May 20, 1955. A transfer of the assets of the corporation was discussed by the officers, directors and stockholders of the Illinois corporation at several meetings prior to May 20, 1955.
 
 
 4
 A lease was taken in the name of the Wisconsin corporation on a factory building in Williams Bay, Wisconsin, on a date prior to May 20, 1955. The machinery, equipment and other assets of the Illinois corporation were moved to the factory building in Wisconsin during a period commencing May 20, 1955. The last of the property had been removed from Illinois by June 1, 1955.
 
 
 5
 On July 5, 1955, the Central Metallic Casket Co., Inc., was organized as a Wisconsin corporation. The officers and stockholders were the same as those of the Illinois corporation. The organizational meeting of the Wisconsin corporation was held July 8, 1955. The minutes reveal that the Wisconsin corporation assumed all the debts and obligations of the Illinois corporation.
 
 
 6
 The Wisconsin corporation began manufacturing operations and incurred additional obligations. On April 3, 1956, the Wisconsin corporation was adjudicated a bankrupt following the filing by certain creditors of the Illinois corporation of an involuntary petition in bankruptcy. The assets were sold pursuant to an order of the Referee for approximately $40,000.00. There are thirty unsecured creditors of the Wisconsin corporation with claims approximating $8,000.00. There are about one hundred thirty unsecured creditors of the Illinois corporation whose claims total $50,600.00. In addition, there are priority tax creditors such as the United States of America and the Industrial Commission of Wisconsin, whose claims as filed exceed $46,000.00.
 
 
 7
 The petitioners were general creditors of the Illinois corporation at the time of the transfer of the assets. They appeared at the first meeting of creditors of the Bankrupt herein, and joined with others in nominating and selecting the Trustee in Bankruptcy. They filed claims as general, unsecured creditors of the Bankrupt.
 
 
 8
 Petitioners claim that as the transfer of assets was made without compliance with the Illinois Bulk Sales Act (Iil.Rev.Stat. Ch. 121 1/2, 78 et seq.), such transfer was void. It is admitted that written notice of the transfer of the fixtures, machinery and equipment from the Illinois corporation to the corporation now bankrupt was not given to the then existing creditors.
 
 
 9
 At the outset, we are confronted with a motion by appellees to dismiss the appeal. By order, this motion was taken with the case on the hearing on the merits. In support of the motion it is urged that an unsecured creditor has no standing to appeal from an adverse decision of the trial court without first having obtained permission to do so. Petitioners argue that whether or not there was a violation of the Illinois Bulk Sales Act, there was no justiciable harm or legal damage to the appellants. It is argued that appellants were not deprived of any security or lien rights which they had or to which they were entitled prior to the transfer. Movants say that appellants were unsecured general creditors prior to the transfer and that they were in the same position at the time they attempted to take this appeal.
 
 
 10
 The Trustee in Bankruptcy never joined with appellants in their petition for review and the subsequent appeal to this Court. Appellants did not secure or attempt to secure the permission of the District Court to prosecute this appeal in the name of the Trustee.
 
 
 11
 It is well established that actions upon behalf of a bankrupt estate must be prosecuted by the Trustee or in his name by leave of court. In re Chakos, 7 Cir., 24 F.2d 482, 486. However, in the case at bar, the interest of the petitioners is adverse to the bankrupt estate. They claim title to the funds realized from the sale of the assets of the bankrupt.
 
 
 12
 Both sides rely on In re Tyne, 7 Cir., 261 F.2d 249. In that case we stated that an individual general creditor ordinarily does not possess standing to appeal unless granted authority to do so in the name of the trustee, citing, inter alia, in re Huntingdon and Broad Top Mountain Railroad and Coal Company, 3 Cir., 213 F.2d 411, 414, and In re Cook's Motors, Inc., 1 Cir., 142 F.2d 369. But we pointed out that the principle of trustee representation is not always strictly applied and, in the Tyne case, we permitted an unsecured creditor to appeal from an adverse order of the District Court. We stated that 11 U.S.C.A. 47, sub. b conferred jurisdiction to entertain a direct appeal; that no objection was raised to appellant's petition to review the order of the referee and that allowance of the appeal would prevent further delay in litigation.
 
 
 13
 Under the circumstances of this case, we hold the appeal herein should not be dismissed because permission had not been granted to prosecute the appeal in the name of the Trustee.
 
 
 14
 The other point urged for dismissal of the appeal is that appellants have not suffered any justiciable harm or damage,-- that there has been no invasion of their legal rights. Appellees argue that appellants were general unsecured creditors before the transfer and retained the same status afterwards. We think such a statement is an over-simplification. A determination of the status of the appellants in the instant case necessitates a consideration by us of the issues on the merits. We, therefore, deny the motion to dismiss the appeal.
 
 
 15
 The petition of appeallants is unusual. It amounts to a petition for reclamation of all the assets of the banrkupt, free and clear of all liens, and subject only to the costs of administration in the bankruptcy proceeding. Appellants asked that the fund be distributed pro rata to them and to the members of the class of creditors of the Illinois corporation which they represent.
 
 
 16
 Appellants argue that in the case at bar, an Illinois corporation transferred all of its assets located in Illinois, otherwise than in the ordinary course of trade or in the usual prosecution of vendor's business, without giving its creditors a sworn written statement as required by the Illinois Bulk Sales Act. Ill.Rev.Stat. Ch. 121 1/2, 78 er seq. Appellants claim that under Illinois law, such a transfer is void, and the succeeding Wisconsin corporation never obtained legal title to these assets.
 
 
 17
 The District Court held that a transaction in violation of the Illinois Bulk Sales Act is voidable rather than void, and that the appellants' equity of avoidance has been cut off by the rights of the trustee in bankruptcy who has the standing of an attaching lienholder. In its decision, the District Court said: 'Very strong argument could be made that the transfer occurred in Wisconsin and therefore its consequences are to be governed by Wisconsin law.' (170 F.Supp. 327)
 
 
 18
 Relying principally upon the existence of a lease to a factory building in Williams Bay, Wisconsin, wherein the Wisconsin corporation was named lessee, and which was apparently executed prior to the removal of the assets from Illinois, appellants urge the transfer occurred on the shipment of the assets from Illinois to Wisconsin prior to June 1, 1955. Although the Wisconsin corporation was not then organized, appellants urge the transferee was the Wisconsin corporation having a de facto existence, or the officers of the Wisconsin corporation as promoters thereof.
 
 
 19
 We think the minutes of the meeting of the stockholders of the Illinois corporation held in Chicago on June 30, 1955 are of controlling significance. This date was at least one month after the completion of the removal of the property to Wisconsin. After ratifying the action of the Board of Directors in removing all the physical assets of the Illinois corporation to Williams Bay, Wisconsin, a resolution was adopted to organize a Wisconsin corporation under the name 'Central Metallic Casket Co., Inc.,' with a capital stock of $25,000.00, and the transfer to said corporation all of its assets upon the Wisconsin corporation assuming all liabilities of the Illinois corporation. As stated heretofore, the filing of the Articles of the Wisconsin corporation was completed on July 5, 1955, when they were recorded in Elkhorn, the County Seat of Walworth County, Wisconsin. The organizational meeting of the new corporation was held July 8, 1955.
 
 
 20
 We think it is clear there was no Wisconsin corporation de jure or de facto which could have been the transferee of the assets of the Illinois corporation on June 1, 1955. The earliest date shown for the authorization to form the new corporation and to transfer the assets thereto, was June 30, 1955. The consideration for the transfer of assets to the new corporation was the assumption of the debts of the Illinois corporation.
 
 
 21
 We hold the assets of the Illinois corporation were located in Wisconsin at the time the transfer thereof was made to the Wisconsin corporation. The Findings of Fact and Conclusions of Law by the Referee that the transfer was made and completed in Illinois are clearly erroneous. In our opinion, the assets were not transferred to the Bankrupt in violation of the Illinois Bulk Sales Act.
 
 
 22
 We also think the District Court was on solid ground in holding there was an additional basis for its decision. The District Court held that, assuming arguendo, the provisions of the Illinois Bulk Sales Act were violated by the transfer of the assets to Bankrupt, appellants, nevertheless, are not entitled to obtain all of the assets of the Bankrupt except for the cost of administration. No claim is made that the moving of the assets from Illinois to Wisconsin was secret. After such removal, the Illinois creditors took no action to reduce their claims to a lien. The Illinois Act gives the creditor neither title to nor a lien upon the goods fraudulently transferred. Goldstein v. Greenstone, 223 Ill.App. 511. The District Court described the rights of the Illinois creditors as an equity of avoidance which is merely an inchoate right until asserted and ripened by appropriate judicial proceedings.
 
 
 23
 The Illinois creditors did not assert any right except as unsecured creditors of Bankrupt. They filed their claims as such in the bankruptcy proceedings; attended the first meeting of creditors and voted for the selection of a Trustee. We think the District Court was correct in holding, under these circumstances, that petitioners (appellants) may not now be heard to insist that they be placed in a select class entitled to all of the assets of the Bankrupt.
 
 
 24
 Judgment affirmed.