In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY,** Debtor (two cases).

Appeal of **CONGRESS OF RAILWAY UNIONS,** in Nos. 71–1366 and 71–1386.

Appeal of **RAILWAY LABOR EXECUTIVES' ASSOCIATION,** in Nos. 71–1367 and 71–1387.

Appeal of **COMMONWEALTH OF PENNSYLVANIA et al.,** in No. 71–1403.

Nos. 71–1366, 71–1367, 71–1386, 71–1387 and 71–1403.

United States Court of Appeals, Third Circuit.

Argued June 2, 1971.

Decided July 16, 1971.

William Mahoney, Highsaw & Mahoney, Washington, D. C., for Congress of Railway Unions and Railway Labor Executives Assn.

Gordon P. MacDougall, Washington, D. C., for Com. of Pa. and others.

Matthew W. Bullock, Jr., Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for Penn Central.

Before McLAUGHLIN, ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

These consolidated appeals contest two orders promulgated by the United States District Court for the Eastern District of Pennsylvania, sitting as a railroad reorganization court, Penn Central Transportation Company, debtor.

Order No. 232 prohibits the appellants [1] from "instituting or maintaining any litigation directly affecting the continuance or discontinuance of passenger trains covered by the Act" in any court other than the reorganization court, or "without first obtaining leave" of the court to do so. The order followed an application by Penn Central for relief after appellants had instituted an action in the United States District Court for the Western District of Pennsylvania seeking to enjoin the discontinuance of certain trains contemplated by the National Rail Passenger Corporation (Amtrak), a corporate body created by the Rail Passenger Service Act of 1970, (1a) P.L. 91–518, 45 U.S.C. § 501 et seq. (Railpax).

---

[1]. Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, City of Philadelphia, City of Pittsburgh, State of New York, Illinois Commerce Commission, Michigan Public Service Commission, Public of the State of Indiana, Public Utilities Commission of Ohio, City of Dayton, City of Cincinnati, City of Greencastle, City of Terre Haute, City of Fort Wayne, National Association of Railroad Passengers, and United Transportation Union.

Order No. 242 denied leave requested, pursuant to Order 232, by appellants Railway Labor Executives' Association and Congress of Railway Unions to join Penn Central in a civil action brought on April 23, 1971, in the United States District Court for the District of Columbia challenging the labor protective provisions adopted pursuant to the Act.

### Order No. 232

Because appellants question the jurisdiction of the reorganization court to promulgate this order and argue, assuming jurisdiction to lie, that exercise of that jurisdiction was in this case an abuse of discretion, it is necessary briefly to review the genesis of this order.

On September 30, 1970, the Interstate Commerce Commission authorized Penn Central to discontinue 16 passenger trains. An action was brought by appellants[2] in the Western District of Pennsylvania to review the decision. A three-judge court was convened, and an interlocutory injunction was issued, enjoining the discontinuance. Penn Central appealed the injunction order to the Supreme Court, which, in Baker v. Pennsylvania, 401 U.S. 902, 91 S.Ct. 875, 27 L.Ed.2d 801 (1971), vacated the judgment, ruling that the matter had become moot.[3] Thereafter, appellants filed a second action in the Western District of Pennsylvania at No. 71–282 seeking to prevent any passenger service discontinuance until May 1, 1971, Amtrak's beginning date. This action was necessitated, according to appellants, because "[d]espite the Supreme Court's ruling,

Penn Central threatened to discontinue the trains. This defiant attitude on the part of the Trustees caused these public parties to institute suit * * * on March 19, 1971."

On April 2, 1971, Penn Central obtained from the reorganization court a rule to show cause why appellants should not be enjoined from proceeding with the Western District action because the subject matter was "subsumed in the issues presented before" the reorganization court on a petition by trustees for authority to issue trustee certificates pursuant to arrangements under the Act.[4]

After hearing, the reorganization court found that the Western Pennsylvania litigation would hamper Penn Central organizational efforts and, by Order No. 232, enjoined appellants from proceeding in that action. This appeal followed.

■■ Appellants urge that no jurisdiction lies in the reorganization court to enjoin matters relating to train discontinuances. Alternatively, they argue that exercise of jurisdiction here was an abuse of discretion. As recognized by the statutory court, a reorganization court does not have "exclusive jurisdiction over all controversies that in some way affect the debtor's estate," Callaway v. Benton, 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553 (1949), and may not oust the authority of administrative agencies charged with the responsibility of regulating service. Palmer v. Massachusetts, 308 U.S. 79, 60 S.Ct. 34, 84

---

2. A companion action was brought at No. 70–1157, Milton J. Shapp v. United States.

3. Implicit in the Court's ruling was a recognition that the Act had pre-empted methods formerly utilized to discontinue service of passenger trains:

   SEC. 802. EFFECT ON PROCEEDINGS.

   Upon enactment of this Act, no railroad may discontinue any intercity rail passenger service whatsoever other than in accordance with the provisions of this Act, notwithstanding the provisions of

   any other Act, the laws or constitution of any State, or the decision or order of, or the pendency of any proceeding before, any Federal or State court, agency, or authority.

   Railpax was enacted October 30, 1970.

4. Previously, on March 31, 1971, the trustees had petitioned the court for authority (1) to enter into a contract with Amtrak and (2) to obtain financial support necessary for such a contract. The court approved Penn Central's entry into Amtrak on April 27, 1971.

L.Ed. 93 (1939).[5] But the teachings of these cases do not preclude the reorganization court from "enjoin[ing] the prosecution of any suit which would take from it the decision of any question which it has the duty to decide in connection with the reorganization or which would hamper it in any way in exercising the power imposed upon it."

In re Imperial "400" National, Inc., 429 F.2d 671, 677 (3rd Cir. 1970).

Our inquiry, therefore, resolves itself to a single issue: would the persistence of the Western District proceedings relating to the discontinuance of passenger service trains, now limited to an interpretation of the Rail Passenger Service Act of 1970,[6] hamper the reorganization

5. Memorandum Opinion Sur Interlocutory Injunction, Conclusion of Law No. 3. Statutory court (Aldisert, Circuit Judge, and Gourley and Rosenberg, District Judges.)

6. Sections 404, 801, 802, Pub.Law 91–518, October 30, 1970:

   SEC. 404. DISCONTINUANCE OF SERVICE.

   (a) Unless it has entered into a contract with the Corporation pursuant to section 401(a) (1) of this Act, no railroad may discontinue any intercity passenger train whatsoever prior to January 1, 1975, the provisions of any other Act, the laws or constitution of any State, or the decision or order of, or the pendency of any proceeding before, a Federal or State court, agency, or authority to the contrary notwithstanding. On and after January 1, 1975, passenger train service operated by such railroad may be discontinued under the provisions of section 13a of the Interstate Commerce Act. Upon filing of a notice of discontinuance by such railroad, the Corporation may undertake to initiate passenger train operations between the points served.

   (b) (1) The Corporation must provide the service included within the basic system until July 1, 1973, to the extent it has assumed responsibility for such service by contract with a railroad pursuant to section 401 of this Act.

   (2) Except as provided in section 403 (a) of this Act, service beyond that prescribed for the basic system undertaken by the Corporation upon its own initiative may be discontinued at any time.

   (3) If at any time after July 1, 1973, the Corporation determines that any train or trains in the basic system in whole or in part are not required by public convenience and necessity, or will impair the ability of the Corporation to adequately provide other services, such train or trains may be discontinued under the procedures of section 13a of the Interstate Commerce Act (49 U.S.C. 13a) : *Provided, however,* That at least thirty days prior to any change or discontinuance, in whole or in part, of any service under this subsection, the Corporation shall mail to the Governor of each State in which the train in question is operated, and post in every station, depot, or other facility served thereby notice of the proposed change or discontinuance. The Corporation may not change or discontinue this service if prior to the end of the thirty-day notice period, State, regional, or local agencies request continuation of the service and within ninety days agree to reimburse the Corporation for a reasonable portion of any losses associated with the continuation of service beyond the notice period.

   (4) For the purposes of paragraph (3) of this subsection, the reasonable portion of such losses to be assumed by the State, regional, or local agency shall be no less than 66⅔ per centum of, nor more than, the solely related costs and associated capital costs, including interest on passenger equipment, less revenues attributable to, such service. If the Corporation and the State, regional, or local agencies are unable to agree upon a reasonable apportionment of such losses, the matter shall be referred to the Secretary for decision. In deciding this issue the Secretary shall take into account the purposes of this Act and the impact of requiring the Corporation to bear such losses upon its ability to provide improved service within the basic system.

   SEC. 801. ADEQUACY OF SERVICE.

   The Commission is authorized to prescribe such regulations as it considers necessary to provide safe and adequate service, equipment, and facilities for intercity rail passenger service. Any person who violates a regulation issued under this section shall be subject to a civil penalty of not to exceed $500 for each violation. Each day a violation continues shall constitute a separate offense.

   SEC. 802, *supra,* n. 3.

court in exercising the power imposed on it by the bankruptcy law?

■ The reorganization court found that "at least for the present" it should retain control of such litigation. Upon an examination of the reasons set forth by the reorganization court, we have concluded that this was no abuse of discretion. We recognize, as did the court below, that matters relating to train discontinuances are not ordinarily heard by the reorganization court. But we hold that the district court amply justified its action in this case:

"In view of the Railpax statute, however, the present situation is quite different. This Court has pending before it the preliminary application of the Trustees for leave to enter into a Railpax contract and to borrow the money which will be required for the initiation payment under that statute. A hearing on that application is scheduled to be held on April 20, 1971. As this opinion is being written, crucial negotiations are in progress between the Trustees and the Railpax incorporators, and various other interested Federal agencies, seeking to establish the terms of the proposed contract. The views of the Trustees and the many other parties in interest in the reorganization proceeding, as to the desirability of 'joining' Railpax, and the ultimate decision of this Court as to whether to approve such action, must necessarily involve a careful weighing of the advantages and disadvantages. It would be unthinkable, in my view, that this already complicated situation should be further complicated by the uncertainties of pending litigation in other courts. It now appears that a wide range of issues involving the implementation of the Railpax legislation will be coming to a head within the next few weeks or months.

\*   \*   \*   \*   \*   \*

"It is a matter of common knowledge that very many interested persons and governmental entities and agencies question the adequacy of intercity rail passenger service proposed to be supplied by Railpax. It is not inconceivable that, if they were free to do so, large numbers of such persons, entities and groups might seek to litigate particular issues in a wide variety of forums. This would clearly hamper reorganization efforts, not only because of the burden of the litigation itself, but because of the prospect of inconsistent results. It is apparent, therefore, that, at least for the present, this Court should retain control over litigation involving the impact of the National Rail Passenger Service Act of 1970 upon the Debtor."

*Order No. 242*

The labor associations also appeal from an invoking of Order No. 242 by the reorganization court prohibiting Penn Central from being added as a defendant in a District of Columbia proceeding, Civil Action No. 825–71, which they brought to attack the validity of the Secretary of Labor's certification under Section 405 of the Act.[7]

There they sought a temporary restraining order and preliminary and permanent injunctions against three railroads from discontinuing rail service on May 1, 1971, under Section 401(a) (1) and against Amtrak from taking over responsibility for rail service on May 1, 1971, under Section 401(b). The request for injunction was based upon the

---

7. Section 405 provides that the contracts executed pursuant to Section 401(a) (1) shall include certain enumerated provisions for the benefit of railroad employees affected by the railroads' discontinuance of intercity rail passenger service "which shall in no event provide benefits less than those established pursuant to Section 5(2) (f) of the Interstate Commerce Act";

and that no Section 401(a) (1) contract may be executed unless the Secretary of Labor has certified to Amtrak that the labor protective conditions of such contract provide the fair and equitable protection required by the Act. The Secretary of Labor issued his certification pursuant to Section 405(b) on April 16, 1971.

invalidity of the Secretary's certification under Section 405(b) and the failure of the railroads to provide employee protective arrangements as required by Section 405(a) and (b) resulting in the invalidity of the Amtrak-Railroad contracts. At the time the suit was brought, April 23, 1971, the application of the trustees for authorization of Penn Central to execute Amtrak contracts was pending before the reorganization court. Approval was received April 27, 1971, after hearings were held on April 20 and 23, 1971. Proper notice had been given to the labor association appellants because they had been permitted to intervene generally in the reorganization proceedings.[8]

On April 28, 1971, the court entered its Order No. 242 denying appellants' request to join Penn Central in the District of Columbia action on the ground that they should have raised at the Philadelphia hearings on April 20 and 23, 1971, all issues raised in the District of Columbia action and since they did not do so, they are not permitted to raise them thereafter "on principles of res judicata, estoppel and laches." The court held that the "contracting parties, and this Court, had a right to rely upon the certification of the Secretary of Labor * * * as the basis for determining whether the contract was or was not in the best interests of the Debtor's estate." The court concluded that the "time to challenge the sufficiency or legality of these provisions was before the contract was approved" and that "having silently acquiesced in permitting the parties to make binding commitments, these organizations cannot be allowed to rewrite the contract."

The unions have labored hard to demonstrate that the issue concerning the Secretary's certification was not, and should not have been, before the reorganization court; hence, they urge, the *res judicata* principle was improperly applied. We agree, and, indeed, Penn Central conceded the point at oral argument. But because the Secretary's certification issue vis à vis Penn Central was not foreclosed in the reorganization court, it does not necessarily follow, as the unions would have it, that reversal is required.

■ The grant or denial by the reorganization court of leave to join Penn Central in the District of Columbia proceeding was a matter within the sound discretion of the court. We find the very reasons articulated by Judge Fullam in support of his promulgation of Order 232 to compel affirmance of his action here.

In assessing the propriety of the district court's action, we find no prejudice to appellants in denying them leave to join Penn Central in the District of Columbia action. We perceive the thrust of that suit to be a frontal attack on the Secretary's certification affecting Amtrak generally, and though Penn Central is now a contract party to Amtrak, by the force of appellants' own argument any judgment in the District of Columbia action affecting Amtrak generally may be subsequently enforced against Penn Central in the reorganization court, since the issue has never been considered there. In sum, Penn Central is not an indispensable party to the District of Columbia suit. Hence, it is no abuse of discretion for the district court to refuse to require further disbursements to defend the District of Columbia action or to subject the debtor to the uncertainties the pendency of the action would generate.

The orders of the district court will be affirmed.

---

8. Reorganization Court Order No. 134, January 25, 1971. These organizations represent all the labor unions which represent Penn Central's union employees. At the time the request for intervention was made the unions contended that the rights of the railroads' organized employees were likely to be affected by actions taken in the reorganization proceedings.