In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.

Irving DOMNITCH and Harold Domnitch, Appellants,

v.

The BANK OF NEW JERSEY as Indenture Trustee under a mortgage of the New York Connecting Railroad Co., et al., Appellees.

No. 74–2221.

United States Court of Appeals, Third Circuit.

Argued April 17, 1975.

Decided July 16, 1975.

Copal Mintz, New York City, for appellants.

Carl Helmetag, Jr., Matthew J. Siembieda, Philadelphia, Pa., for Penn Central Trustees.

Joseph J. Connolly, William H. Ewing, Philadelphia, Pa., for New York Connecting Railroad Co.

Edward I. Dobin, Victor P. Petrone, Curtin & Heefner, Morrisville, Pa., for the Bank of New Jersey, Indenture Trustee.

## OPINION OF THE COURT

Before SEITZ, Chief Judge, ROSENN and WEIS, Circuit Judges.

PER CURIAM:

New York Connecting Railroad Co. (Connecting) is a wholly-owned subsidiary of the debtor, Penn Central Transportation Co. (Penn Central). The Bank of New Jersey, the indenture trustee, holds a mortgage which is the first lien upon all of Connecting's property to secure an issue of outstanding and unpaid bonds.

In October 1965, Connecting, for the sum of $5,000, granted appellants, Harold and Irving Domnitch, an option for a term of two years and four months to purchase the air rights located 22 feet above certain railroad tracks in New York City. In December 1969, Connecting leased all of its properties to Penn Central for a term of ten years in consideration of rentals sufficient to service the indebtedness of the bonds secured by the mortgage. On June 21, 1970, Penn Central entered into reorganization under section 77 of the Bankruptcy Act. Although Penn Central's bankruptcy resulted in Connecting's default on the mortgage in October 1970, Connecting has not entered into the reorganization proceedings.

On November 16, 1970, Irving Domnitch, Connecting, and Penn Central executed a document designated as a "rider" to the 1965 option. The document provided that, for the additional sum of $20,000, Domnitch had exercised his rights under the option and that Connecting and Penn Central agreed to sell the designated air rights located higher than 22 feet above the railroad tracks. Closing was set for March 31, 1971, or within 30 days after notice to appellants of the approval of the sale by Connecting's Board of Directors, Penn Central's trustees, and "the Reorganization Court, as required by law."

Closing never occurred, and in November 1973, appellants instituted an action in the Supreme Court of the State of New York against Connecting and the indenture trustee to obtain specific performance of the 1970 sale agreement. The indenture trustee petitioned the reorganization court to enjoin appellants from continuing the New York action.

After a hearing, Judge Fullam found that Penn Central was in possession of the disputed air rights by virtue of its lease with Connecting. Concluding that he had jurisdiction over the dispute, he enjoined the continuation of the New York litigation as being inequitable to the indenture trustee. The Domnitches appeal; we affirm the judgment of the district court.

Appellants contend that the reorganization court lacked jurisdiction to enjoin the New York litigation. The reorganization court has "exclusive jurisdiction of the debtor and its property, wherever located    . . .." Bankruptcy Act § 77(a), 11 U.S.C. § 205(a) (1970). A debtor's property includes any leasehold estate; any controversy involving that estate is within the exclusive jurisdiction of the bankruptcy court. *Callaway v. Benton*, 336 U.S. 132, 142, 69 S.Ct. 435, 441, 93 L.Ed. 553 (1949). Thus, if the property leased by Connecting to Penn Central included the disputed air rights, the reorganization court had jurisdiction to enjoin the New York action.

■ The "Description of the Property Leased" to Penn Central included:

All of the right, title and interest of the New York Connecting Rail Road Company in and to all of its property, real, personal and mixed, including equipment, machinery, tools, materials and supplies, cash, securities, claims, intangibles, choses in action, rights (contractual or otherwise), obligations, interests, leaseholds, trackage rights, licenses and franchises, and including without limitation:

A. the railroad of the New York Connecting Rail Road Company . . . .

Connecting, as the owner of the fee, had ownership of the air rights. *See United States v. Causby*, 328 U.S. 256, 264, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). The

lease of all its property would seem to include the lease of its air rights.

Appellants argue, however, that the "Description of the Property Leased" must be interpreted in light of the preamble to the lease which indicates that the parties entered into the lease so that Penn Central could use and operate the "lines of railroad and rights of way." The preamble demonstrates, it is argued, that only the property necessary for the use and operation of the railroad lines and rights of way by Penn Central was included in the lease. We do not agree that the purposes for which parties enter into a lease necessarily limit the property in actuality leased. In any event, whatever ambiguity may exist as a result of the preamble is resolved by the chronology of the various transactions involved.

The 1965 option expired in February 1968 with the Domnitches having failed to exercise their rights of purchase. Between the expiration of the option and the execution of the rider in November 1970, no agreement existed dividing the air rights at a horizontal plane 22 feet above the surface. At the signing of the lease in December 1969, the air rights were an undifferentiated mass, and being necessary, at least in part, to the operation and use of the railway, their possession passed to Penn Central with the signing of the lease. *See Fabrycky v. Nad Realty Corp.*, 261 App.Div. 268, 25 N.Y.S.2d 347, 349 (1941).

Only with the execution of the rider in November 1970 did the parties contemplate a division of the air rights. Significantly, the document embodying the division recognized that Penn Central possessed the air rights because the sale was made subject to the approval not only of Connecting's board of directors, but also of Penn Central's trustees and the reorganization court as required by law.

Moreover, appellants' conduct demonstrates their belief in Penn Central's possession of the disputed air rights. After the execution of the lease in 1969, appellants actively negotiated with Penn Central. Thus, on April 16, 1970, they rejected a refund tendered by Penn Central of the sum of $5,000 paid for the option price, and instead suggested that the sale be closed on June 30, 1970. After Penn Central entered into reorganization, negotiations between appellants and Penn Central continued. As noted above, the rider was executed among appellants, Connecting, and Penn Central. After the signing of the rider, appellants and Penn Central continued to settle such details of the sale as the wording of the deed.

■■ In sum, the chronology of the transactions and the actions of appellants belie their contention that the disputed air rights were not included in the 1969 lease. As Penn Central was in possession of the air rights by virtue of the lease, the reorganization court had jurisdiction to enjoin the New York litigation.[1]

Appellants also contend that, assuming jurisdiction, the reorganization court

---

1. Appellants suggest that the reorganization court lacked jurisdiction because the sale of the air rights would not disturb Penn Central's use of the railway. Appellants also note that the sale documents contain many provisions ensuring that the sale would not disturb the operation of the trains, and that their personal observations indicated that no trains in fact are being operated on the tracks located below the disputed air rights. Since the reorganization court's jurisdiction may be based on Penn Central's possession of the disputed air rights, and since the sale obviously disturbs that possession, we fail to understand the significance of appellants' "use" argument. Moreover, Judge Fullam found that the tracks were being used and that the sale inevitably would disturb the operation of the trains. Appellants have not adduced evidence sufficient to convince us that these findings are clearly erroneous. The disturbance of the operations of the trains would be an independent basis for the jurisdiction of the reorganization court. *See, In re Penn Central Transp. Co.*, 446 F.2d 1109 (3d Cir. 1971), *cert. denied, Pennsylvania v. Baker*, 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 787 (1972).

erred in restraining the New York litigation. The fundament of appellants' various claims is that the interests of Penn Central and Connecting in the lease are too insubstantial to support the issuance of the injunction. Appellants take too narrow a view of the principles undergirding the powers of the reorganization court: protecting the rights of creditors, and respecting the "public's interest in the survival of the railroad as a going enterprise." *In re Penn Central Transp. Co.*, 484 F.2d 323, 330 (3d Cir.), *cert. denied, Baker v. Morgan Guaranty Trust Co. of New York*, 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 485 (1973).

■ Order No. 170 of the reorganization court restrains the indenture trustee from instituting any action to foreclose its mortgage without 14 days written notice to all interested parties. We do not believe the reorganization court erred in concluding that maintenance of the New York action, which seeks the conveyance of the air rights free of all liens, would be inequitable to the interests of the indenture trustee. Moreover, certain holders of mortgages upon tracks leased to and used by Penn Central have agreed to abide by Order No. 170, but have reserved the right to litigate whether they are subject to the jurisdiction of the reorganization court. Allowance of the New York suit might induce the mortgage holders to take immediate steps to protect their interests by contesting the propriety of Order No. 170. The resultant litigation could jeopardize the continued operation of trains upon tracks leased to and used by Penn Central and this clearly would be antithetical to both the reorganization proceedings and to the public interest in the continued operation of the railroad.

The judgment of the district court will be affirmed.

